THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDIFECS INC., a Washington corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>TIBCO SOFTWARE INC., a Delaware corporation,<br><br>    Defendant. | CASE NO.:  10-CV-330-RSM<br><br>**DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br><u>**NOTE ON MOTION CALENDAR**</u><br>April 23, 2010<br><br>**ORAL ARGUMENT REQUESTED** |

MOTION TO DISMISS
CASE NO.:  10-CV-330-RSM
3907701_6.DOC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel.: (206) 883-2500
Fax: (206) 883-2699

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   ALLEGATIONS IN THE COMPLAINT .......................................................... 2

    A.    Edifecs's Allegations. ............................................................................ 2

    B.    Edifecs's Causes of Action. .................................................................. 3

    C.    Edifecs's Request for an Employee Segregation Order. ........................ 4

    D.    Facts Edifecs does not Allege. .............................................................. 4

    E.    Other Relevant Contract Terms. ........................................................... 5

III.  ARGUMENT ................................................................................................... 6

    A.    Legal Standard:  Rule 12(b)(6) Motion to Dismiss. ............................. 6

    B.    Edifecs Fails to State a Claim under any Cause of Action. ................... 7

    C.    "Inevitable Disclosure" Allegations are Impermissible Under California Law. ........................................................................................................ 7

    D.    The Breach of Contract and Implied Covenant Claims Fail. ................ 9

        1.    The Trade Secret Allegations Fail to State a Claim. ................ 10

        2.    The Employee Segregation Allegations Fail to State a Claim. ........ 10

        3.    The Implied Covenant Claim is not a Valid Fallback ............... 12

    E.    The UTSA Claim Fails Under California or Washington Law. ........... 13

        1.    Legal Standard:  Choice of Law in Trade Secret Cases ........... 13

        2.    California Law Applies to the UTSA Claim ............................. 16

        3.    California Law Mandates Dismissal. ........................................ 18

        4.    The Result would be the Same Under Washington Law. .......... 18

    F.    Edifecs Fails to State a Claim for "Injunctive Relief." ...................... 20

IV.   CONCLUSION ............................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (2005)..................................................................................................................16

*Air Prod. & Chem., Inc. v. Johnson*, 442 A.2d 1114 (Penn. Ct. App. 1982).................................19

*Ajaxo, Inc. v. E\*Trade Group, Inc.*, 135 Cal. App. 4th 21 (2006)...............................................16

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ....................................................................................6

*Bayer Corp. v. Roche Molecular Sys.*, 72 F. Supp. 2d 1111 (N.D. Cal. 1999)............................7

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ...............................................................6

*Bendinger v. Marshalltown Trowell Co.*, 994 S.W.2d 468 (Ark. 1999).......................................18

*Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166 (W.D. Wash. 2006) ....................................14

*Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F. Supp. 1301 (D. Nev. 1982)..........................................................................................................15

*Central Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501..........................................................9

*Clorox v. Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954 (E.D. Wisc. 2009) ..............13, 17

*Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277 (9th Cir. 2009)...................................8

*Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F. Supp. 151 (W.D. Penn. 1992) .................................................................................................15

*Continental Car-Na-Var v. Moseley*, 24 Cal.2d 104 (1942)........................................................7, 8

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010)......................................................6

*Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.*, 753 F. Supp. 1566 (S.D. Fla. 1990) ...............................................................................15

*Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1326 (S.D. Fla. 2001) ...............................................................................................7

*Desert Sun Net LLC v. Kepler*, 2006 WL 3091170 (W.D. Wash. Oct. 27, 2006) .......................12

*Dowell v. Biosense Webster*, 179 Cal. App. 4th 564 (2009).......................................................8, 11

*E.I. DuPoint de Nemours & Co., Inc. v. Christopher*, 431 F.2d 1012 (5th Cir. 1970) .......................................................................................................................17

*E.I. duPont de Nemours and Co. v. American Potash & Chem. Corp.*, 200 A.2d 428 (Del. Ch. 1964) ...............................................................................................19

-ii-

*Earthweb, Inc. v. Schlack*, 71 F. Supp. 2d 299 (S.D.N.Y. 1999) *aff'd after remand*, 2000 WL 1093320 (2nd Cir. 2000) ........................................18

*Ed Nowogroski Ins. Inc. v. Rucker*, 971 P.2d 936 (Wash. 1999)........................13

*Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937 (2008) ..................................8

*ElectroOptical Indus., Inc. v. White*, 90 Cal.Rptr.2d 680 (1999) .......................7

*FLIR Systems, Inc. v. Parrish*, 176 Cal. App. 4th 1270 (2009) ....................7, 8, 9, 16

*Gentry v. eBay Inc.*, 99 Cal. App. 4th 816 (2002) ...........................................19

*GlobeSpan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229 (C.D. Cal. 2001).................7, 17

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317 (2000)......................................11, 12

*Haberman v. Washington Public Power Supply Sys.*, 744 P.2d 1032 (Wash. 1987) ....................14

*IBM Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98 (D. Minn. 1992) .................18

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939 (2009)........................................................................20

*Kammerer v. Western Gear Corp.*, 635 P.2d 708 (Wash. 1981) ........................14

*Magnum Defense, Inc. v. Harbour Group Ltd.*, 248 F. Supp. 2d 64 (D.R.I. 2003)....................15

*Major v. Stocker, Smith, Luciani & Staub*, 2009 WL 2595594 (E.D. Wash. Aug. 19, 2009) ..........................................................................6

*Mayview Corp. v. Rodstein*, 480 F.2d 714 (9th Cir. 1973) ...............................7

*McGill v. Hill*, 644 P.2d 680 (Wash. Ct. App. 1982)........................................9

*McKelvey v. Boeing North Am., Inc.*, 74 Cal. App. 4th 151 (1999) ...................19

*MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 422 F. Supp. 2d 724 (N.D. Tex. 2006) ..........................................................................14

*Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.*, 205 Cal. App. 3d 442 (1988) ........................................................................11

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005)........................................................................16

*PepsiCo v. Redmond*, 54 F.3d 1262 (7th Cir. 1995) .......................................18

*PSC Inc. v. Reiss*, 111 F. Supp. 2d 252 (W.D.N.Y. 2000)..............................18

*Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658 (2003)...............16

*Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467 (1984)..............12

**MOTION TO DISMISS**
CASE NO.: 10-CV-330-RSM
3907701_6.DOC

-iii-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009) ....................................6

*State Farm Mut. Auto Ins. Co. v. Dempster*, 174 Cal. App. 2d 418 (1959)..................11

*Strategix, Ltd. v. Infocrossing West, Inc.*, 142 Cal. App. 4th 1068 (2006)....................9

*Temco Metal Prod. v. GT Dev. Corp.*, 2000 WL 556607 (D. Or. 1997) .......................13

*Thola v. Henschell*, 164 P.3d 524 (Wash. Ct. App. 2007) ...........................................20

*Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425 (2003) ......................................8, 11

*Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95 (D. Mass. 2001) .........14

*Universal Analytics, Inc. v. MacNeal-Scwendler Corp.*, 707 F. Supp. 1170 (C.D. Cal. 1989) .......................................................................................................7

*VL Systems, Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708 (2007).....................................8

*Webcraft Tech., Inc. v. McCaw*, 674 F. Supp. 1039 (S.D.N.Y. 1987).........................15

*Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002) .....................................7, 8

*Zango, Inc. v. PC Tools Pty. Ltd.*, 494 F. Supp. 2d 1189 (W.D. Wa. 2007) ...............19

**STATUTES**

Cal. Bus. & Prof. Code § 16600 .....................................................................................8

Cal. Civ. Code § 3426.1 .................................................................................................17

Cal. Civ. Code § 3426.2(a) .............................................................................................9

Cal. Civ. Proc. Code § 2019.210 ...................................................................................16

RCW 2.06.040 ................................................................................................................13

RCW 19.109.010 ............................................................................................................17

**RULES**

Cal. R. Ct. 8.1115...........................................................................................................7

Fed. R. Civ.Proc. 12(b)(6) ....................................................................................1, 6, 10, 18

**MISCELLANEOUS**

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145.............................................14, 15

MOTION TO DISMISS
CASE NO.: 10-CV-330-RSM
3907701_6.DOC
-iv-
WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1   Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant TIBCO Software Inc.

2   hereby moves to dismiss the Complaint filed by plaintiff Edifecs Inc. for failure to state a

3   claim.

4   **I.      PRELIMINARY STATEMENT**

5   This is a trade secret case where Edifecs alleges the theory of "inevitable disclosure":

6   that TIBCO cannot possibly avoid misusing trade secrets in the future, and therefore its

7   employees must be segregated to avoid wrongdoing.   Specifically, Edifecs speculates that

8   because TIBCO, its longtime business partner, has acquired a company that Edifecs views as a

9   competitor, it will be "impossible" for TIBCO employees to avoid misusing Edifecs information

10  in work with the newly-acquired company.  Edifecs seeks an order requiring TIBCO to segregate

11  employees who worked with Edifecs for two years from any contact whatsoever with the newly-

12  acquired company.

13  Edifecs's complaint should be dismissed because the governing law – California –

14  absolutely prohibits "inevitable disclosure" allegations.  In addition, Edifecs fails to state a claim

15  for *actual* trade secret misappropriation – which it only alleges *might* have happened, and for

16  which it supplies no supporting factual allegations.   These shortcomings dispose of all four

17  causes of action.  Separately, there are independent reasons to dismiss the contract claims and the

18  cause of action for "injunctive relief."

19      ●  **Breach of Contract**:  The parties' confidentiality contract contains a California choice

20  of law clause.  It also permits TIBCO to engage in competitive activities against Edifecs, with no

21  obligation to segregate its employees during such competitive work.  Edifecs alleges that TIBCO

22  may have engaged in actual misappropriation *or* that it will one day engage in "inevitable

23  disclosure."   Edifecs also alleges that TIBCO has breached the contract by not agreeing to

24  segregate employees during work with the newly-acquired company.  These claims fail because

25  (1) alleging "inevitable disclosure" is impermissible under California law; (2) the weak, either/or

26  allegation of actual trade secret misappropriation does not state a claim; and (3) as a matter of

27  law, TIBCO cannot breach a contract by engaging in conduct that the contract permits.

1    ● **Breach of the Implied Covenant**:  Edifecs's duplicative implied covenant claim fails

2    for the same reasons, and also because a party cannot use the implied covenant to demand that

3    the defendant be prohibited from engaging in conduct that the contract permits.

4    ● **UTSA Trade Secret Misappropriation**:   Trying to avoid California's ban on

5    "inevitable disclosure" allegations, Edifecs alleges its Uniform Trade Secrets Act cause of action

6    under Washington law.   But under Washington's choice of law analysis – the "significant

7    relationship" test from the Restatement (Second) Conflict of Laws – California law clearly

8    applies.  Edifecs's UTSA cause of action accordingly fails to state a claim for the same reasons

9    as the breach of contract cause of action.

10   Even if Washington law were to apply, the result would be the same:  Washington has

11   not accepted the "inevitable disclosure" theory, and there is no reason to believe it would.

12   "Inevitable disclosure" is a highly controversial theory in trade secret law, one that has

13   increasingly met with judicial disfavor around the country after its high-water mark in the mid-

14   1990s.  But even if Washington accepted a full-blown "inevitable disclosure" theory, Edifecs has

15   not alleged the necessary elements, and its claim would still be dismissed.

16   ● "**Injunctive Relief**":  There are separate, additional reasons to dismiss Edifecs's fourth

17   cause of action for "injunctive relief:  there is no such free-standing cause of action under

18   California or Washington law, and it would be preempted by the UTSA under California or

19   Washington law in any event.   For all of these reasons, TIBCO respectfully requests that its

20   motion to dismiss be granted.

21   **II.      ALLEGATIONS IN THE COMPLAINT**

22   **A.      Edifecs's Allegations.**

23   Edifecs, based in Washington, alleges that it entered into a business contract in 2001 with

24   TIBCO, based in California.  *See* Complaint ¶¶ 4-5, 8-11.  Under the contract, TIBCO licensed

25   products from Edifecs and was to sell them with its own products.  *Id*. ¶ 11.  The parties pledged

26   to protect the other's confidential information.  Edifecs alleges that, over the years, both parties

27   did so.  Edifecs does not allege any past confidentiality violations by TIBCO.  *Id.* ¶ 11-16.

1    Edifecs alleges that in January 2010, TIBCO acquired a company called Foresight, which

2    Edifecs describes as a competitor.  *Id.* ¶¶ 17-22.  Edifecs does not allege that the acquisition

3    itself breached the contract or was otherwise unlawful.

4    Edifecs instead alleges that it is fearful that TIBCO will, in the future, misappropriate

5    trade secrets by using them with the newly-acquired Foresight.  To that end, Edifecs alleges that

6    TIBCO employees who "have worked with and learned Edifecs's confidential and proprietary

7    information are now the same TIBCO employees who are or will be actively involved in the

8    development, improvement, and integration of Foresight's products and services, in direct

9    competition with Edifecs."  *Id.* ¶ 2.  Edifecs claims to have "fears" regarding "the imminent

10   threat of misuse and improper disclosure" of confidential information.  *Id.* ¶ 22.  It therefore

11   alleges that TIBCO employees will engage in "inevitable disclosure":

12          These TIBCO employees (or contractors or representatives) would inevitably and

13          unavoidably use and rely on their background, knowledge, and training with

14          Edifecs in working on developing, modifying, integrating, and improving

15          Foresight's competing products.  Whether intentional or inadvertent, Edifecs's

16          confidential, proprietary, and trade secret information would be (if it has not

17          already been) disclosed to and used by Foresight in violation of TIBCO's

             nondisclosure obligations."

18   *Id.* ¶ 24, *see also* ¶¶ 25, 27 ("[I]t will be impossible for them to avoid using Edifecs's

19   confidential, proprietary, and trade secret information.").

20       **B.      Edifecs's Causes of Action.**

21          Edifecs raises four causes of action:  breach of contract, breach of the covenant of good

22   faith and fair dealing, trade secret misappropriation, and "injunctive relief."  Edifecs's manner of

23   making these allegations, however, avoids any specific allegations of *actual*, ongoing misuse of

24   confidential information.

25          For its two contract claims, Edifecs alleges "inevitable disclosure" of trade secrets.

26   "TIBCO has used and disclosed, *or* absent taking commercially reasonable steps inevitably and

27   unavoidably will use and disclose, Edifecs's technologies, software products, and other

confidential, proprietary and trade secret information[.]" *Id.* ¶ 31(emphasis added)  The use of the word "or" is important, because its means that Edifecs avoids making a firm allegation that TIBCO has engaged in *actual* trade secret misappropriation.

Edifecs also alleges that TIBCO has breached the parties' contract because TIBCO has allowed TIBCO employees who have worked with Edifecs to work with the newly acquired company, Foresight.  "By employing the same team," Edifecs alleges, "TIBCO is breaching and will continue to breach is contractual obligations to Edifecs, including its duty to use a commercially reasonable standard of care to avoid disclosure of Edifecs's confidential information to Edifecs's competitor." *Id.* ¶ 32.

For its Uniform Trade Secrets Act and "injunctive relief" causes of action, Edifecs repeats the "inevitable disclosure" allegation, again without making a firm accusation of actual misuse:  "By employing the same team of engineers," Edifecs alleges, "TIBCO has misappropriated, *or* absent taking commercially reasonable steps inevitably and unavoidably will misappropriate, Edifecs's trade secret information[.]" *Id.* ¶ 43 (emphasis added).

**C.     Edifecs's Request for an Employee Segregation Order.**

Based on the "inevitable disclosure" allegations, Edifecs requests an order requiring that TIBCO employees who worked with Edifecs be segregated "From contacting or communicating with the individuals working on Foresight for at least two years, to avoid the intentional or inadvertent use or disclosure to Foresight of any of Edifecs's confidential, proprietary, or trade secret information."  Edifecs also requests a do-no-harm order, which would repeat the parties' existing confidentiality obligation by ordering TIBCO not to misuse trade secrets.  *See* Complaint at 10 (Prayer for Relief).

**D.     Facts Edifecs does not Allege.**

Notably, Edifecs does not allege facts suggesting any actual misuse of trade secrets by any TIBCO employee – and certainly none in the state of Washington.  For example, and unlike a typical trade secret complaint, Edifecs does not allege theft of a customer list or technical files, solicitation of customers, or the marketing of a copycat product.  Edifecs likewise does not allege

1    that its claimed secrets are compatible or interoperable with Foresight's own products, that

2    Foresight lacks similar, pre-existing information of its own to make use of.  Edifecs does not

3    allege that TIBCO and Foresight in fact have a plan to copy any secret aspect of an Edifecs

4    product, that a TIBCO product development employee knows the inner workings of any Edifecs

5    product, or that such an employee is in fact engaged in developing a copycat product.

6          And although Edifecs claims that a former employee sued in a separate lawsuit violated a

7    non-competition covenant by allegedly helping TIBCO acquire Foresight, Edifecs does not

8    allege that TIBCO or that individual took any Edifecs trade secrets, or that the individual is one

9    of the "approximately twelve TIBCO employees" employees who worked with Edifecs over the

10    years.  *See* Complaint ¶¶ 17-18, 23.  The individual is not a party to this lawsuit.

11         **E.**    **Other Relevant Contract Terms.**

12          The parties' contract states that "This Agreement shall be governed by and construed in

13    accordance with the laws of California without giving effect to its conflict of laws provisions."

14    *See* Declaration of Malikha Daniels in Support of Opposition to Motion for Expedited

15    Discovery, Exhibit A § 12(e) (March 15, 2010, Docket Nos. 16-17).  Among other things, the

16    parties were to collaborate in technical support and bug fixes for the licensed products.  *See id*. at

17    ¶ 2(b), Exhibit C (at 19).  TIBCO was to "exclusively own all right, title and interest to any work

18    product, whether pre-existing or newly developed" arising from the contract except for Edifecs's

19    "Confidential Information."  *See id.* Exhibit F (at 29).

20          The parties also agreed that TIBCO was allowed to create competitive products even

21    during the term of the agreement, so long as it did not use confidential Edifecs information to do

22    so:

23          TIBCO reserves the right to develop, manufacture, market and/or distribute

24          products that are similar to or compete with the Licensor Products, and to have

25          others do so on its behalf.  [....]  Notwithstanding the foregoing, TIBCO may not

26          reverse engineer or decompile the Licensor Products or use Licensor Source Code

27          in order to exercise its right to such independent development.

**MOTION TO DISMISS**          -5-          **WILSON SONSINI GOODRICH & ROSATI**
CASE NO.:  10-CV-330-RSM          701 Fifth Avenue, Suite 5100
3907701_6.DOC          Seattle, WA  98104-7036
          Tel: (206) 883-2500
          Fax: (206) 883-2699

1   *See id.* § 13(h).   The parties placed no other restrictions on the permitted competitive

2   development:  the contract has no terms requiring that TIBCO employees or computer systems

3   be segregated from such work, or that TIBCO employees who work with Edifecs be barred for

4   two years from any communication with persons engaged in such work.   Under the parties'

5   contract, the same people exposed to confidential Edifecs information could be directly involved

6   in developing a competitive product from scratch.   These terms are important in assessing

7   Edifecs's allegations on this motion.

8   **III.    ARGUMENT**

9       **A.    Legal Standard:  Rule 12(b)(6) Motion to Dismiss.**

10       The Supreme Court recently tightened the pleading requirements necessary to survive a

11   Rule 12(b)(6) motion to dismiss.   Conclusory assertions and formulaic recitation of the elements

12   of a claim are insufficient.   *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965

13   (2007).   Conclusory allegations, unsupported by facts, are "not entitled to be assumed true."   *See*

14   *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) ("[W]here the well-pleaded facts do not permit

15   the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it

16   has not 'show[n]'—'that the pleader is entitled to relief.'").   "Speculative" allegations are

17   insufficient.   *Id.*; *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1270 (11th Cir. 2009) (*Twombly*

18   requires more than speculation); *Major v. Stocker, Smith, Luciani & Staub*, 2009 WL 2595594,

19   *1 (E.D. Wash. Aug. 19, 2009) (pleading requires "more than a sheer possibility that a defendant

20   has acted as alleged.").

21       Separately, where a complaint relies on, and quotes from, a contract between the parties,

22   the defendant may attach and cite to the contract on a motion to dismiss without converting the

23   filing into a motion for summary judgment.   *See Coto Settlement v. Eisenberg*, 593 F.3d 1031,

24   1038 (9th Cir. 2010).   Here, where Edifecs repeatedly cites to and quotes from the parties'

25   contract, the document is integral to its Complaint.   *See* Complaint ¶¶ 10-15.

26

27

MOTION TO DISMISS
CASE NO.:  10-CV-330-RSM
3907701_6.DOC

-6-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

**B.      Edifecs Fails to State a Claim under any Cause of Action.**

Under all four of its causes of action – breach of contract, breach of the implied covenant, the Uniform Trade Secrets Act, and "injunctive relief" – Edifecs makes the same speculative accusations regarding future misuse of confidential information.

In this motion, TIBCO will first outline California's total rejection of the "inevitable disclosure" theory, and it will then address the consequences of that rejection for Edifecs's complaint.  TIBCO will also explain why the result is the same even if Washington law were to apply (though it does not apply under choice of law principles).

**C.      "Inevitable Disclosure" Allegations are Impermissible Under California Law.**

Edifecs's allegations turn on "inevitable disclosure," a theory where a trade secret plaintiff seeks injunctive relief on speculation that, in the future, it will be impossible for the defendant not to misappropriate trade secrets.  In other words, the plaintiff forecasts a 100 percent chance of trade secret misappropriation, and asks the court to alter the job responsibilities and duties of the defendant's employees to suit the plaintiff's professed fears. All too often, the demands have an anticompetitive motive, and seek to slow down or interfere with the lawful work efforts of the defendant's employees.

California completely rejects the theory of "inevitable disclosure" – and has done so for decades, even before the theory had a name.  *See Continental Car-Na-Var v. Moseley*, 24 Cal.2d 104, 107 (1942) (reversing injunction based on former employer's speculation); *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1464 (2002) ("inevitable disclosure" injunctions are impermissible in California).[1]   Speculative accusations of future, unavoidable misuse of

---

[1] Other cases rejecting speculative theories under California trade secret law include *GlobeSpan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001) (rejecting "inevitable disclosure"); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1326, 1338 (S.D. Fla. 2001) ("inevitable disclosure" is not recognized in California); *Bayer Corp. v. Roche Molecular Sys.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999) (same); *Universal Analytics, Inc. v. MacNeal-Scwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) (trade secret claim against former employees who joined competitor, worked in same areas as they had for the former employer, and quickly released an improved product rejected as "speculation"); *Mayview Corp.*
(continued...)

**MOTION TO DISMISS**
CASE NO.: 10-CV-330-RSM
3907701_6.DOC

-7-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

confidential information are not only impermissible, but *sanctionable* to assert – even when the plaintiff has a reasonable suspicion that trade secrets might be misused.  *See FLIR Systems, Inc. v. Parrish*, 176 Cal. App. 4th 1270, 1277, 1278 n.4 (2009) (describing California's total rejection of "inevitable disclosure" theory, and finding plaintiff in "bad faith" for making speculative trade secret claims without evidence of wrongdoing).

California's rejection of "inevitable disclosure" applies even when the plaintiff presents evidence of alleged wrongdoing.  *See Whyte*, 101 Cal. App. 4th at 1464-68 (plaintiff alleged that defendant downloaded and took information, and deleted files); *FLIR Systems*, 176 Cal. App. 4th at 1278-79 (plaintiff alleged that defendant copied information onto portable drive).

For the same reasons, California courts do not issue "do no harm" trade secret reminder injunctions (as Edifecs requests here) just because a plaintiff fears future misuse.  *See Moseley*, 24 Cal.2d at 106, 109 (one part of court's holding reversed a do-no-harm injunction reciting that a defendant should not misuse confidential information); *FLIR Systems*, 176 Cal. App. 4th at 1275 (one of plaintiff's rejected injunctions was a do-no-harm order).

The reason California courts reject "inevitable disclosure" is that it amounts to a court-created means of injecting non-competition terms into the parties' contract.  *See Whyte*, 101 Cal. App 4th at 1462-63 ("inevitable disclosure" allows plaintiffs to ask courts to create after-the-fact contract terms the parties never bargained for, amounting to a non-competition covenant).

Non-competition contracts, in turn, are void under California law.  Cal. Bus. & Prof. Code § 16600.  *Any* term barring any competitive activity short of narrowly prohibiting trade

---

(...continued from previous page)

*v. Rodstein*, 480 F.2d 714, 718 n.7 (9th Cir. 1973) (applying California law and reversing injunction based only on "opportunity" that defendant might disclose trade secrets).

When an aberrant California court approved an "inevitable disclosure" injunction in 2000 without analysis or discussion of contrary authority, the state Supreme Court quickly ordered the ruling depublished.  *See ElectroOptical Indus., Inc. v. White*, 90 Cal.Rptr.2d 680 (1999) ("Ordered not officially published April 12, 2000.").  It is thus provides no authority, and Edifecs cannot use the case to support its argument, as it did in its recent reply brief on its motion for expedited discovery.  *See* Cal. R. Ct. 8.1115.

---

secret misuse is impermissible. *E.g.*, *Dowell v. Biosense Webster*, 179 Cal. App. 4th 564, 578 (2009) (voiding clauses that restricted activity beyond narrow misuse of trade secrets); *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1429-32 (2003) (contract barring solicitation of customers void to the extent customers were not trade secrets).   A party cannot avoid California's ban on non-competes by arguing that a term does not completely block competition. California also prohibits so-called "partial" or "narrow" restraints.   *See Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937 (2008) (rejecting "narrow restraints"); *Impaxx*, 113 Cal. App. 4th at 1428 (rejecting plaintiff's argument that contract term was permissibly "limited" because it did not completely prevent employees from working in their trade or generally doing business in the market).

These rules encompass business-to-business contracts, not just employment contracts. Business contract terms can be void because of their effect on the livelihood of non-party employees, and also because they restrain a company's lawful business activities. *E.g.*, *Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277, 1292 (9th Cir. 2009) (voiding portion of franchise agreement); *VL Systems, Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708, 718 (2007) (voiding no-hire clause in business contract); *Strategix, Ltd. v. Infocrossing West, Inc.*, 142 Cal. App. 4th 1068, 1073-74 (2006) (voiding nonsolicitation clause in contract for sale of a business).

Following directly from these rules, California narrowly defines the Uniform Trade Secrets Act term "threatened misappropriation."  *See* Cal. Civ. Code § 3426.2(a).   There is a "threatened misappropriation" only when a defendant manifests an imminent threat to misuse trade secrets, and not because the plaintiff fearfully speculates about future misuse.   A defendant's "mere possession" of trade secrets is insufficient.  *See FLIR Systems*, 176 Cal. App. 4th at 1279 (defining term); *Central Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 518 (pre-*FLIR Systems* dicta outlining similar test).

### D.     The Breach of Contract and Implied Covenant Claims Fail.

With these rules in mind, we turn to Edifecs's causes of action.   Edifecs first alleges breach of contract and breach of the implied covenant of good faith and fair dealing.   The

-9-

1    parties' contract contains a California choice of law clause.  *See Daniels Declaration, Exhibit A* §

2    13(e) (Docket Nos. 16-17).  Choice of law clauses are effective absent some fundamental public

3    policy conflict with the law of the forum state.  *See McGill v. Hill*, 644 P.2d 680, 683 (Wash. Ct.

4    App. 1982) (stating rule).  Here, there is no public policy reason the choice of law clause would

5    not apply.

### 1.    The Trade Secret Allegations Fail to State a Claim.

7           Edifecs fails to state a claim for "inevitable disclosure" under its causes of action for

8    breach contract or breach of the implied covenant of good faith and fair dealing, because

9    California law absolutely prohibits any such allegation.  Edifecs's speculation about future

10   misuse is likewise insufficient to assert "threatened misappropriation."  *See FLIR Systems*, 176

11   Cal. App. 4th at 1278-79.

12          In turn, Edifecs also fails to state a claim for *actual* misuse of confidential information.

13   First, Edifecs avoids firmly alleging any actual misuse by alleging that TIBCO has engaged in

14   actual *or* inevitable misuse.  *See* Complaint ¶ 31.  Because the second possibility is

15   impermissible as a matter of law, Edifecs's either/or allegation is insufficient – it does not

16   squarely allege facts that would support a claim of actual wrongdoing.  Alleging that something

17   is *possible* is not enough.  Second, Edifecs fails to allege any facts in the Complaint that could

18   support a claim of actual misuse in any event, and instead engages in exactly the sort of

19   conclusory allegations and pure speculation that the Rule 12(b)(6) analysis forbids.  Stripped of

20   the primary "inevitable disclosure" allegation and standing alone, Edifecs's tentative allegation

21   of possible *actual* misappropriation fails to state a claim under Rule 12(b)(6) and the

22   *Twombly/Iqbal* standard.

### 2.    The Employee Segregation Allegations Fail to State a Claim.

24          To the extent Edifecs alleges a separate act of wrongdoing to support its contract claims –

25   *i.e.*, that TIBCO breached the contract by refusing to segregate employees who worked with

26   Edifecs from contact with the newly-acquired company, because such refusal allegedly falls

27

1   below a "commercially reasonable standard of care" – this allegation likewise fails to state a

2   claim under California law.  *See* Complaint ¶ 32.

3          First, this allegation is a restatement of the "inevitable disclosure" allegation.  Second, the

4   parties' agreement expressly allows TIBCO to develop or sell a competing product, even during

5   the term of its agreement with Edifecs.  The contract contains no terms requiring that TIBCO

6   segregate any employees who work with Edifecs from such competitive work.  It bars TIBCO

7   only from reversing or decompiling the Edifecs products, and from misusing confidential

8   information.  *See*  Daniels Declaration, Exhibit A §§ 11(a), 12(h) (Docket Nos. 16-17).  By not

9   bargaining for the segregation terms it now demands at the time of the parties' agreement,

10  Edifecs waived its ability to claim that TIBCO breached the contract by not engaging in

11  employee segregation.   By definition, TIBCO cannot breach an agreement by engaging in

12  (alleged) conduct that the governing contract permits.  Edifecs therefore fails to state a claim.

13         Third, Edifecs's segregation demands – because they go beyond the existing contractual

14  prohibition on misusing trade secrets – would be void as an illegal non-competition covenant

15  even if they had been included in the parties' California agreement to begin with.  As described

16  above, California voids contract terms that go beyond narrowly prohibiting trade secret misuse.

17  Contract terms that seek to restrain competitive activities short of trade secret misuse are

18  impermissible.  *See Dowell*, 179 Cal. App. 4th at 578 (applying rule); *Thompson*, 113 Cal. App.

19  4th at 1429-32 (same).  Here, Edifecs's demand that TIBCO employees be barred from all

20  contact with Foresight employees for two years goes far beyond a narrow prohibition on trade

21  secret misuse, and instead seeks to disrupt their lawful work activities.  Thus, even if the parties

22  *had* agreed that TIBCO must segregate employees who work with Edifecs from any contact with

23  activities that are competitive to Edifecs, that clause would be void as a matter of law.

24         Edifecs cannot allege breach of contract based on non-existent contract terms that would

25  be void under the contract's controlling law.  It cannot assert that TIBCO is not engaging in

26  "commercially reasonable" conduct when California law provides that competitive activities

27  short of misusing trade secrets are lawful, and thus reasonable.  Nor can it allege that some

1  unspecified standard of commercial reasonableness trumps conduct that the contract permits.

2  *See*, *e.g.*, *Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.*, 205 Cal. App. 3d 442,

3  451 (1988) (a party cannot claim that alleged custom and usage could "alter or vary the terms of

4  the contract"); *State Farm Mut. Auto Ins. Co. v. Dempster*, 174 Cal. App. 2d 418, 424 (1959)

5  (finding that contract's terms "cannot be varied by custom or usage").   Edifecs fails to state a

6  claim for these reasons as well.

7                    **3.        The Implied Covenant Claim is not a Valid Fallback.**

8          Edifecs's separate cause of action for breach of the implied covenant of good faith and

9  fair dealing does not save its failed contract allegations.   Edifecs argues that TIBCO breached the

10  implied covenant based on same accusations described above.   *See* Complaint ¶¶ 35-38.   But a

11  plaintiff cannot allege a breach of the implied covenant when the agreement permits the

12  complained-of activity.

13         Indeed, the implied covenant "exists merely to prevent one contracting party from

14  unfairly frustrating the other party's right to receive the benefits of the agreement actually

15  made."   *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 349 (2000).   It therefore "cannot impose

16  substantive duties or limits on the contracting parties beyond those incorporated in the specific

17  terms of their agreement."   *See id. at* 349 (emphasis added).   If a party's actions do not breach a

18  written contract provision, they cannot breach the implied covenant.   Consequently, any

19  covenant claim that goes beyond the scope of the underlying contract is superfluous.   *See*

20  *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 482 (1984) ("There cannot be a

21  valid express contract and an implied contract, each embracing the same subject, but requiring

22  different results.").

23         Here, the parties' agreement permits TIBCO to develop a competing product, even while

24  working with Edifecs and possessing "Confidential Information" from Edifecs.   The contract

25  does not require TIBCO to segregate employees involved in such activities, segregate computer

26  networks, or impose any other, similar restrictions.   The parties therefore agreed that a TIBCO

27  employee who knows Edifecs "Confidential Information" could engage in competitive activities.

1   As a result, Edifecs fails to state a claim for breach of the implied covenant when it alleges that

2   TIBCO has not enacted extra-contractual security measures.

3       **E.    The UTSA Claim Fails Under California or Washington Law.**

4           **1.    Legal Standard:  Choice of Law in Trade Secret Cases.**

5       Edifecs repeats its "inevitable disclosure" accusations in its UTSA trade secret

6   misappropriation cause of action, and purports to raise that claim under Washington law, rather

7   than California law.   *See* Complaint ¶¶ 39-46.   Edifecs again alleges that TIBCO "has

8   misappropriated, *or* absent taking commercially reasonable steps inevitably and unavoidably will

9   misappropriate, Edifecs's trade secret information[.]"   *See* Complaint ¶ 43 (emphasis added).

10  Because Edifecs's UTSA claim duplicates its breach of contract claim, the same analysis under

11  California law and under the *Twombly/Iqbal* pleading standard disposes of the claim.

12      The question, then, is whether Edifecs can evade California's ban on "inevitable

13  disclosure" allegations by alleging the UTSA claim under Washington law.  Edifecs cannot do so

14  under the applicable choice of law test, Washington would not adopt the "inevitable disclosure"

15  theory in any event, and Edifecs would not state a claim under the theory even if it did.

16      First, Washington courts have not yet decided whether any version of the "inevitable

17  disclosure" theory is permissible, or if it should be rejected as too one-sided and extreme.  This

18  Court recently rejected an "inevitable disclosure"-like allegation.  *See Desert Sun Net LLC v.*

19  *Kepler*, 2006 WL 3091170, *8 (W.D. Wash. Oct. 27, 2006) (rejecting speculative accusations

20  where plaintiff was "afraid that Defendants will disclose or use" trade secrets).  The Washington

21  Supreme Court has also stated that, "[a]s a general rule, an employee who has not signed an

22  agreement not to compete is free, upon leaving employment, to engage in competitive

23  employment."  *See Ed Nowogroski Ins. Inc. v. Rucker*, 971 P.2d 936, 941 (Wash. 1999).  This

24  general rule of free competition cuts against applying "inevitable disclosure" in Washington.  On

25  the other hand, an older case from the District of Oregon stated, without citation, that

26

27

1   Washington has a "limited endorsement" of the theory. *See Temco Metal Prod. v. GT Dev.*

2   *Corp.*, 2000 WL 556607, *3 (D. Or. 1997).[2]

3          Second, Washington would not and should not adopt this highly controversial theory – a

4   theory almost universally criticized by legal scholars and economists, and rejected in most recent

5   cases around the country.   The theory allows companies to demand extra-contractual non-

6   competition covenants even in the absence of actual wrongdoing, harms individual employees

7   who seek to change jobs, and harms regional economies where high-tech innovation is

8   important.   Nonetheless, Edifecs argues that Washington should adopt the "inevitable disclosure"

9   theory, and this creates a conflict. *See Clorox v. Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp.

10  2d 954, 966 (E.D. Wisc. 2009) (where plaintiff asserted "inevitable disclosure" under Wisconsin

11  UTSA and Wisconsin was silent on its applicability, California law applied under choice of law

12  analysis).   The Court must therefore engage in a choice of law analysis to determine whether

13  California or Washington law applies to the UTSA claim.

14         California law applies.   Washington's choice of law approach – the significant

15  relationship test from the Restatement (Second) Conflict of Laws – governs this analysis.   Under

16  this test, courts examine (1) the place where the injury occurred; (2) the place where the conduct

17  causing the injury occurred; (3) location of the parties; and (4) the place where the parties'

18  relationship is centered. *See Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175-76 (W.D.

19  Wash. 2006); Restatement (Second) Conflict of Laws § 145.

20         Even outside of trade secret cases, courts virtually always choose the same law as that

21  found in the parties' choice of law clause for related claims. *E.g.*, *Haberman v. Washington*

22  *Public Power Supply Sys.*, 744 P.2d 1032, 1066 (Wash. 1987) (where contract had Washington

23  ─────────────────

24         [2] An unpublished Washington ruling from the mid-1990s approved of an "inevitable

    disclosure" injunction, albeit without detailed analysis of the question.   That ruling, issued during

25  the heyday of "inevitable disclosure" cases around the country, is unciteable and therefore

    provides no precedent. *See* RCW 2.06.040 ("All decisions of the court having precedential value

26  shall be published as opinions of the court.   Each panel shall determine whether a decision of the

    court has sufficient precedential value to be published as an opinion of the court.   Decisions

27  determined not the have precedential value shall not be published.").

choice of law clause, applying Washington law to related fraud claim; "Although a choice of law provision in a contract does not govern tort claims arising out of the contract, it may be considered as an element in the most significant relationship test."); *Kammerer v. Western Gear Corp.*, 635 P.2d 708, 712 (Wash. 1981) (license contract had California choice of law clause, related fraud in the inducement claim also governed by California law; "the parties agreed California law would apply.").

In trade secret cases under the "significant relationship" test and similar tests, the parties' choice of law and the place of the alleged injury are dispositive. First, courts unanimously agree that the second factor, the place of the defendant's alleged misappropriation, is by far the most important factor in determining what trade secret law applies. It is much more important than the first factor, the plaintiff's place of injury. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 145, Comment f (explaining why "the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts."); *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 422 F. Supp. 2d 724, 739 (N.D. Tex. 2006) (Texas law applied to trade secret claim under Restatement test because alleged wrongdoing took place there, though both parties resided elsewhere); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 115 (D. Mass. 2001) (following Restatement to hold that Massachusetts – the place of alleged wrongdoing – determined choice of law for trade secret claim); *Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.*, 753 F. Supp. 1566, 1570-71 (S.D. Fla. 1990) (same).[3]

The third factor, location of the parties, matters less, and is neutral when the parties' locations differ. *See Default Proof*, 753 F. Supp, at 1571 (following RESTATEMENT (SECOND)

---

[3] Other cases applying this rule include *Magnum Defense, Inc. v. Harbour Group Ltd.*, 248 F. Supp. 2d 64, 69 (D.R.I. 2003) (in case with no contract between parties, applying Rhode Island UTSA to trade secret claim because alleged wrongdoing took place there); *Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F. Supp. 1301, 1305 (D. Nev. 1982) (in absence of contract between parties, applying California law to trade secret claim because "[t]hat is the state where any disclosure or use of Plaintiff's trade secrets would be taking place.").

**MOTION TO DISMISS**
CASE NO.: 10-CV-330-RSM
3907701_6.DOC

-15-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

CONFLICT OF LAWS § 145, Comment e).   Likewise, the fourth factor (whether the parties' relationship was centered anywhere), is insignificant in a trade secret case where the parties are located in different places there is no special importance to determining a center of their relationship.  *See id.*

Second, and for trade secret cases where the parties have a confidentiality contract with a choice of law clause, courts apply the chosen law to the related tort claim.   *See*, *e.g.*, *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F. Supp. 151, 157 (W.D. Penn. 1992) (parties' California choice of law clause, which was to be "construed . . . as to all matters, but not limited to, matters of validity, construction, effect, or performance" applied to trade secret claim); *Webcraft Tech., Inc. v. McCaw*, 674 F. Supp. 1039, 1040, 1043-44 (S.D.N.Y. 1987) (where parties' contract had New Jersey choice of law, applying New Jersey law to both contract- and fiduciary duty-based trade secret claim).   Where *both* the contract's choice of law clause and the site of the alleged wrongdoing are the same, that state's law certainly controls.

### 2.        California Law Applies to the UTSA Claim.

There are several reasons California law applies to the UTSA claim.   First, the place of alleged wrongdoing – TIBCO's future "inevitable disclosure" – is California, where TIBCO is located.   This factor is by far the most important in the "significant relationship" analysis, and counts much more than Edifecs's location in Washington.   The parties' location is split and there is no "center" to their relationship in a trade secret dispute, so those factors are neutral.   Under the Restatement analysis, the place of TIBCO's alleged wrongdoing supplies the choice of law.

Second, the parties chose California law to construe their confidentiality contract, and the contract and UTSA claims are inextricably entangled.   The contract governs the parties' use and disclosure of confidential information, and their rights to make competing products while working together.   Under California law – which Edifecs must concede applies at least to the contract claims – courts apply the same rules and the same case law in cases about confidentiality contracts as they do for UTSA claims.   *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 834-35 (2005) (holding that California's pre-discovery

**MOTION TO DISMISS**
CASE NO.: 10-CV-330-RSM
3907701_6.DOC

-16-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

statute governing identification of trade secret claims applied to plaintiff's related breach of contract cause of action); *Ajaxo, Inc. v. E*Trade Group, Inc.*, 135 Cal. App. 4th 21 (2006) (case for breach of confidentiality contract relied on authority and remedy from UTSA case law).

Because California UTSA law therefore *already* applies to the California contract at issue here, it would make no sense to turn around and apply a different body of UTSA law to the related UTSA cause of action. Even aside from "inevitable disclosure," California has a much more extensive body of UTSA case law than Washington does, and it has settled a number of questions on which Washington law is silent.[4]

Under Edifecs's position, by contrast, one would have to assume that the parties mutually intended that the laws of one state would apply to the contract, and the potentially conflicting laws of another state would apply to a UTSA claim stemming from the same contract and same allegations. This is not plausible.

Third, any duty on TIBCO's part to protect trade secrets in this case arises exclusively because of, and through, the confidentiality contract – a contract that defines confidential information just like the UTSA does. *See* Daniels Declaration, Exhibit A § 1 (Docket Nos. 16-17) (excluding public information and independently-derived information from the definition of "Confidential Information"); Cal. Civ. Code § 3426.1 (same exclusions in definition of trade secret); RCW 19.109.010 (same). This is not a case where, for example, a trade secret plaintiff sues a party with whom it has no contractual privity. *See generally E.I. DuPont de Nemours &*

---

[4] Examples where California has developed very specific UTSA rules include a special procedure for pre-discovery identification of trade secrets, placement of the burden of proof on the question of independent derivation, a well-developed body of case law setting forth a two-part test for attorneys' fees, and rules for proper expert damages reports. *E.g.*, Cal. Civ. Proc. Code § 2019.210 (identification of trade secret claims); *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1659 (2003) (burden of proof on independent derivation); *FLIR Systems*, 176 Cal. App. 4th at 1275 (test for attorneys' fees); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005) (addressing claim-splitting in expert damages opinion).

**MOTION TO DISMISS**
CASE NO.: 10-CV-330-RSM
3907701_6.DOC
-17-
**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1   *Co., Inc. v. Christopher*, 431 F.2d 1012 (5th Cir. 1970) (trade secret claim against competitor
2   who flew over plant in an airplane).

3          Fourth, Edifecs's proposed relief under its UTSA claim – an order segregating TIBCO
4   employees who worked with Edifecs from contact with the newly-acquired Foresight – would
5   amount to a court-created alteration of the parties' California contract.   This is so because the
6   contract permits both parties to develop competitive products, without any terms requiring such
7   employee segregation.    Where Edifecs's proposed UTSA remedy would alter a California
8   contract, affecting the job duties of employees based in California – and do so in a manner that
9   California courts would reject as an illegal non-competition covenant – then the contract and
10  UTSA claims are inextricably entangled.   They should be governed by the same law.

11                    **3.        California Law Mandates Dismissal.**

12         When a choice of law analysis results in the application of California law, "inevitable
13  disclosure" accusations fail.   *See Clorox Co.*, 627 F. Supp. 2d at 966-67 (E.D. Wis. 2009)
14  (California law controlled over Wisconsin law for employee hired from California, because of its
15  rejection of "inevitable disclosure"); *Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1233-34
16  (C.D. Cal. 2001) (California law controlled over New Jersey law because of its policies against
17  "inevitable disclosure" and noncompetition covenants).   And because Edifecs fails to clearly and
18  firmly allege *actual* trade secret misappropriation – as discussed above – the entire UTSA claim
19  fails under Rule 12(b)(6).

20                    **4.        The Result would be the Same Under Washington Law.**

21         Even if Washington law were to apply, Edifecs would still fail to state a claim.   First,
22  there is no reason to believe that a court applying Washington UTSA law to a claim intertwined
23  with a California contract would order any kind of "inevitable disclosure" restrictions on a party
24  located in California.    Second, and more fundamentally, there is no reason to believe that
25  Washington courts would adopt the controversial "inevitable disclosure" theory, and certainly
26  not without first undertaking a careful and sustained analysis of its public policy ramifications.

27

But even if Edifecs were correct and Washington adopted a full-blown "inevitable disclosure" theory, Edifecs still would fail to state a claim. This is because Edifecs's empty allegation that TIBCO's acquisition of another company makes trade secret misuse inevitable is insufficient even in jurisdictions that have recognized the theory.

First, just because a defendant possesses trade secrets and does similar work, that does not, in itself, justify an "inevitable disclosure" injunction. *E.g.*, *Bendinger v. Marshalltown Trowell Co.*, 994 S.W.2d 468, 475 (Ark. 1999) (denying injunction even though former engineering employee had knowledge of the plaintiff's trade secrets); *IBM Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 101 (D. Minn. 1992) ("Merely possessing trade secrets and holding a comparable position with a competitor does not justify an injunction.").

Second, speculation absent a showing of ongoing misconduct or dishonesty is insufficient. *E.g.*, *Earthweb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 310 (S.D.N.Y. 1999) *aff'd after remand*, 2000 WL 1093320 (2nd Cir. 2000) (holding that absent evidence of misconduct, injunctions "should be applied in only the rarest of cases."); *PSC Inc. v. Reiss*, 111 F. Supp. 2d 252, 256 (W.D.N.Y. 2000) (same); *cf. PepsiCo v. Redmond*, 54 F.3d 1262, 1270-71 (7th Cir. 1995) (noting, in affirming injunction, that district court did not abuse its discretion in finding that former employee made "out and out lies," showed a "lack of forthrightness," and was likely to disclose secrets).

Third, Edifecs does not allege that TIBCO or the newly-acquired Foresight lack replacement products for those licensed from Edifecs. "Inevitable disclosure" cases, by contrast, often feature defendants who do not possess any substitute information. *E.g.*, *E.I. duPont de Nemours and Co. v. American Potash & Chem. Corp.*, 200 A.2d 428, 431 (Del. Ch. 1964) (new employer not only lacked chemical process, but had unsuccessfully tried to license it from the plaintiff); *Air Prod. & Chem., Inc. v. Johnson*, 442 A.2d 1114, 1117 (Penn. Ct. App. 1982) (new employer "has not procured similar information" to the information claimed to be secret).

Fourth, TIBCO has not located a single case nationwide where a court, based on a corporate acquisition and a plaintiff's speculation, ordered sweeping employee segregation

**MOTION TO DISMISS**
CASE NO.: 10-CV-330-RSM
3907701_6.DOC

-19-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1   against any contact with employees of the newly-acquired company.  If Edifecs could state a

2   claim on such bare speculation, any plaintiff could get a trade secret injunction anytime a

3   business partner or former employee engaged in competitive activities.  There is no authority for

4   such a radical proposition.  Edifecs fails to state a UTSA claim even if Washington law were to

5   accept a full-blown version of the "inevitable disclosure" theory.

6   **F.   Edifecs Fails to State a Claim for "Injunctive Relief."**

7          There are additional, independent grounds to dismiss Edifecs's fourth cause of action for

8   "injunctive relief" – though it fails for all the reasons described above  Under this cause of

9   action, Edifecs seeks the application of "federal" law to its allegations of trade secret

10  misappropriation.  Edifecs fails to state a claim as a matter of law, for three reasons.

11         First, there is no free-standing cause of action for "injunctive relief" under California law.

12  *See McKelvey v. Boeing North Am., Inc.,* 74 Cal. App. 4th 151, 157 (1999) (stating rule); *Gentry*

13  *v. eBay Inc.,* 99 Cal. App. 4th 816, 822 (2002) (same; affirming dismissal).  If Washington law

14  applied, Washington too does not appear to recognize a stand-alone claim for injunctive relief.

15  *See, e.g., Zango, Inc. v. PC Tools Pty. Ltd.,* 494 F. Supp. 2d 1189, 1195 (W.D. Wa. 2007) (noting

16  that claim for injunctive relief was not independent of plaintiff's substantive causes of action).

17         Second, there is no "federal" law of trade secrets, aside from the Economic Espionage

18  Act (an irrelevant criminal statute).  Trade secret regulation for private, civil disputes like this

19  one is left to the states.  Third, and under state law, the Uniform Trade Secrets Act preempts any

20  tort claim that repeats the same allegations as a trade secret claim.  *See K.C. Multimedia, Inc. v.*

21  *Bank of Am. Tech. & Operations, Inc*., 171 Cal. App. 4th 939, 957-58 (2009) (UTSA preemption

22  of alternative claims).  This is also true even if Washington law applied.  *See Thola v. Henschell*,

23  164 P.3d 524, 531 (Wash. Ct. App. 2007) (same).  Here, where Edifecs pleads the exact same

24  "trade secret" allegations under its claim for "injunctive relief," the cause of action is clearly

25  preempted by the Uniform Trade Secrets Act.

26

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**IV.     CONCLUSION**

For the foregoing reasons, defendant TIBCO respectfully requests that Edifecs's Complaint be dismissed without leave to amend.

Dated:  March 22, 2010

s/ Britton F. Davis
Britton F. Davis, WSBA #39523
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Telephone:  (206) 883-2500
Facsimile:  (206) 883-2699
Email:  bdavis@wsgr.com

– and –

James A. DiBoise, admitted *Pro Hac Vice*
Charles Tait Graves, admitted *Pro Hac Vice*
Jimmy A. Nguyen, admitted *Pro Hac Vice*
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
One Market Street
Spear Tower, Suite 3300
San Francisco, CA  94105-1126
Telephone:  (415) 947-2000
Facsimile:  (415) 947-2099
Email:  tgraves@wsgr.com

*Attorneys for Defendant,*
TIBCO Software Inc.

MOTION TO DISMISS
CASE NO.:  10-CV-330-RSM
3907701_6.DOC

-21-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1

**<u>CERTIFICATE OF SERVICE</u>**

2        I hereby certify that on March 22, 2010, I electronically filed the foregoing with the Clerk

3  of the Court using the CM/ECF system which will send notification of such filing to the

4  following counsel of record.

5              Aneelah Afzali
             aneelah.afzali@stokeslaw.com,dll@stokeslaw.com
6

7              Scott A.W. Johnson
             sawj@stokeslaw.com,klc@stokeslaw.com,wah@stokeslaw.com
8
             Thomas Lerner
9              tom.lerner@stokeslaw.com,michiko.chinen@stokeslaw.com

10  Dated:  March 22, 2010

11

12                                    s/ Britton F. Davis
                                     Britton F. Davis
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE
CASE NO.:  10-CV-330-RSM
3907701_6.DOC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699