HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDIFECS INC., a Washington corporation,

        Plaintiff,

    v.

TIBCO SOFTWARE INC., a Delaware
corporation,

        Defendant.

Case No.:  10-0330 RSM

OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COMPLAINT

Noted on Motion Calendar:
April 23, 2010

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM
47417-005 \ 520747.doc

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 2

    A.  Background and Licensing Agreement ..................................................... 2

    B.  Parties' Confidentiality and Nondisclosure Obligations.......................... 2

    C.  TIBCO's Acquisition of Edifecs's Direct Competitor ............................ 3

    D.  TIBCO Refused to Take Commercially Reasonable Steps....................... 4

    E.  TIBCO's Actual or Imminent Breach of Its Nondisclosure Obligations ............... 4

    F.  Edifecs's Complaint and Expedited Discovery Request........................... 5

III. ARGUMENT ...................................................................................................... 6

    A.  Edifecs Sufficiently Pleads and States a Claim for Relief on All Causes of Action.................................................................................. 6

        1.  Legal Standard for Motions to Dismiss.................................... 6

        2.  Contract Claims Under California Law..................................... 7

        3.  Uniform Trade Secrets Act Claim Under Washington Law ...... 8

        4.  Injunctive Relief ...................................................................... 9

        5.  Allegations TIBCO Claims Edifecs Did Not Make ................. 10

    B.  California Law Does Not Govern the Statutory Claim ......................... 11

        1.  The Choice of Law Provision Only Applies to the Contract Claim.......... 11

        2.  Choice of Law Analysis Reaches the Same Result................... 12

    C.  California Law Does Not Preclude Edifecs's Claims ........................... 14

        1.  Edifecs's Claim for Misappropriation Survives Under California Law................................................................. 14

        2.  TIBCO Misapplies California's Rejection of the Inevitable Disclosure Doctrine............................................... 16

        3.  The Rationale for California's Rejection of the Doctrine Also Does Not Apply....................................................... 18

    D.  Washington Should Adopt the Inevitable Disclosure Doctrine ........................... 19

        1.  Most Jurisdictions Recognize the Doctrine.............................. 20

        2.  The Doctrine Provides Necessary Protection for Trade Secrets ............... 22

IV. CONCLUSION .................................................................................................. 24

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM
47417-005 \ 520747.doc                    -i-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

## I.  INTRODUCTION

Plaintiff Edifecs Inc. has good reason to fear the improper use or disclosure of its confidential, highly sensitive and proprietary information.  Specifically, its long-time OEM partner and customer, TIBCO Software Inc., which has had access to Edifecs's valuable trade secrets for the last decade, has now acquired Edifecs's direct competitor.  The acquisition itself is not a problem.  However, TIBCO's breach of its duty of care to protect Edifecs's confidential information in its possession *is* a significant problem.  In failing to take commercially reasonable steps (as required by the parties' contract), TIBCO has jeopardized — and continues to jeopardize — the confidentiality of Edifecs's proprietary and trade secret information.  Edifecs filed this action, and sufficiently pled all four of its claims, because of TIBCO's breach of contract and the resulting threatened misappropriation of its valuable trade secrets.

TIBCO raises a litany of arguments to dismiss the claims and avoid inquiry into its wrongdoing.  Most prominently, TIBCO characterizes this as an "inevitable disclosure" trade secret case, and tries to use California's rejection of that doctrine as grounds for dismissal.  But this attempt fails. *First*, Edifecs properly alleges independent contract claims as well as a claim for actual or threatened misappropriation of trade secrets, so this is not just an inevitable disclosure trade secret case. *Second*, California law does not govern Edifecs's trade secret claim. *Third*, if California law did apply, TIBCO misinterprets the effect of California's rejection of the inevitable disclosure doctrine.  California law would require Edifecs to ultimately prove actual or threatened misappropriation to obtain some injunctive relief, but it does not bar Edifecs's claims on a motion to dismiss. *Fourth*, TIBCO's own authority mandates denial of the motion to dismiss. *Finally,* because the proper scope of an injunction is not at issue here, the Court need not consider the validity of the inevitable disclosure doctrine.  But if it does consider it, the Court should join the majority of jurisdictions in accepting it.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc                           -1-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

## II.   FACTUAL BACKGROUND

### A.   Background and Licensing Agreement

Edifecs is a software development and consulting company that provides software solutions for health care payment and claims processing systems.  Complaint for Injunctive Relief and Damages ("Complaint") ¶ 8.  TIBCO is a business software company and has been a customer and OEM partner of Edifecs since at least 2001.  *Id.* at ¶ 9.

TIBCO and Edifecs entered into a Software License and Reseller Agreement on or about August 9, 2001, which was amended throughout the years ("License Agreement").  *Id.* at ¶ 10.[1] The License Agreement authorizes TIBCO to use, copy, manufacture, and distribute the object code for several of Edifecs's software products.  Compl. ¶ 11.  The license grant also includes the right to embed or bundle the Edifecs object codes with TIBCO products.  *Id.*[2]  Edifecs is required to provide TIBCO with training and technical support for its products, technologies, and services, as well as enhancements, updates, and modifications for the licensed products in object code form (including release notes, readme files, and user documentation).  *Id.*  All such material is *highly* confidential, proprietary and trade secret information.  *Id.* at ¶ 41-42.

### B.   Parties' Confidentiality and Nondisclosure Obligations

Given the valuable and competitively sensitive nature of the information shared, both parties expressly agreed not to "use, or disclose to any person, either during the term or after the termination of [the License Agreement], any Confidential Information except for purposes consistent with the administration and performance of a party's rights or obligations hereunder, or as required by law."  Compl. ¶ 13.  "Confidential Information" is defined in the License Agreement to include "information concerning new products, trade secrets and other proprietary rights; and any business, marketing or technical information disclosed in relation to this Agreement and identified as confidential by, or proprietary to, the disclosing party."  *Id.* at ¶ 14.

---

[1] A copy of the License Agreement is attached as Exhibit A to the Declaration of Malikha Daniels (Dkt. # 16-17).

[2] Edifecs also provided the source code in connection with Amendment 8 of the License Agreement for purposes of integration with TIBCO products.  TIBCO was supposed to delete the source code after using it.  Edifecs does not know whether the source code was in fact deleted, or whether TIBCO still retains the source code on its server or its files.  Access to the source code by Edifecs's competitors would be detrimental.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc                     -2-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1   The parties also agreed that they would "use a commercially reasonable degree of care, but in

2   any event no less than the same degree of care it uses regarding its own information of a similar

3   nature, to avoid disclosure of any Confidential Information of the other party." *Id.* at ¶ 15.  As

4   part of exercising this standard of care, the parties limited the employees with access to such

5   information, and required those employees to sign confidentiality/nondisclosure agreements.  *Id.*

6        For nearly a decade, Edifecs protected its own and TIBCO's confidential and proprietary

7   information, as required by the parties' agreements.  *Id.* at ¶ 16.  Edifecs believes TIBCO did the

8   same.  *Id.*  The parties shared each other's confidential information only as necessary to develop

9   enhanced technologies and joint solutions for the healthcare industry.  *Id.*[3]

10  **C.   TIBCO's Acquisition of Edifecs's Direct Competitor**

11       In late December 2009, Edifecs received an email from the Executive Vice President of

12  Products and Technology for TIBCO.  *Id.* at ¶ 17.  That email was intended for a former Edifecs

13  employee (Japinder Singh) who currently works for TIBCO.  It was accidentally sent to Mr.

14  Singh's former Edifecs email address.  *Id.*  Through that misdirected email, Edifecs learned that

15  TIBCO was acquiring Foresight Corporation ("Foresight"), a direct competitor of Edifecs, and

16  that Mr. Singh was involved in the purchase — a violation of his employment agreement with

17  Edifecs.  *Id.*  Like Edifecs, Foresight is a software development and consulting firm that provides

18  software solutions primarily to the healthcare industry.  *Id.* at ¶ 18.  On January 8, 2010, TIBCO

19  formally announced its acquisition of Foresight as a separate subsidiary.  *Id.* at ¶ 19.

20       Edifecs sent a letter to TIBCO dated January 11, 2010, putting TIBCO on notice of the

21  potential breaches of the noncompete and nondisclosure obligations in Mr. Singh's employment

22

23  [3] TIBCO claims it "was to 'exclusively own all right, title and interest to any work product, whether pre-existing or
    newly developed' arising from the contract except for Edifecs's 'Confidential Information'" (Defendant's Motion to

24  Dismiss Complaint ("Motion") at 5).  TIBCO quotes from page 29 of Exhibit F of the License Agreement to support
    this claim.  But Exhibit F pertains only to onsite professional services provided by Edifecs employees for integrating

25  Edifecs's product with TIBCO's product.  The ownership language in Exhibit F is limited to the work product
    developed when providing those specific, and very limited, services.  This is why the quoted language is *not* in the

26  main License Agreement.  In any case, the language from Exhibit F is irrelevant because, by its own terms, it
    expressly excludes Edifecs's Confidential Information, which is the material Edifecs seeks to protect through this

27  action.  TIBCO's out-of-context quotation to suggest it has ownership over all work product developed during the
    parties' relationship, however, is disingenuous.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1  agreement with Edifecs, as well as possible violations of Washington's Uniform Trade Secrets

2  Act ("UTSA"). *Id.* at ¶ 19. Edifecs asked TIBCO to prevent and alleviate harm to Edifecs

3  through the Foresight acquisition. *Id.* By letter dated February 1, 2010, Edifecs further shared

4  its serious concerns about the Foresight acquisition and potential breaches of TIBCO's own

5  confidentiality obligations. *Id.* at ¶ 20. Edifecs provided a list of its technologies, software

6  products, and proprietary information that are subject to TIBCO's nondisclosure obligations, as

7  well as a list of TIBCO employees that have been intimately involved in integration of Edifecs's

8  software products. *Id.* Edifecs further emphasized the importance of TIBCO immediately

9  establishing procedures to ensure (a) that no one involved with the Foresight acquisition has

10  access to or uses Edifecs's technologies, software products or other confidential material; and

11  (b) that the individuals at TIBCO that have used and supported Edifecs's confidential material

12  are not involved with Foresight. *Id.* at ¶ 21. This is consistent with the concept of "clean room

13  development," which is a commercially reasonable step used in the software industry to avoid

14  violations of nondisclosure obligations or trade secret misuse.

15  **D.     TIBCO Refused to Take Commercially Reasonable Steps**

16      TIBCO did not agree to implement the commercially reasonable steps requested by

17  Edifecs in its February 1, 2010 letter. Edifecs therefore reiterated its requests by letter dated

18  February 17, 2010. *Id.* at ¶ 22. In that letter, Edifecs asked TIBCO to reconsider its decision.

19  Edifecs also offered two commercially reasonable alternatives to protect its proprietary material

20  and prevent improper use or disclosure, including an option to terminate the License Agreement

21  and return all of Edifecs's confidential information. *Id.* Despite its contractual obligation to use

22  "commercially reasonable" care to protect Edifecs's confidential information, TIBCO did not

23  agree to take such steps.

24  **E.     TIBCO's Actual or Imminent Breach of Its Nondisclosure Obligations**

25      Edifecs believes that approximately twelve TIBCO engineers currently at TIBCO (out of

26  over 2,000 TIBCO employees) have access to and have used Edifecs's technologies, software

27  products and other confidential, proprietary material. *Id.* at ¶ 23. These dozen individuals

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1  (a) have had access, for several years, to some of Edifecs's highly confidential, competitively

2  sensitive, and proprietary information, (b) have received training on Edifecs's technologies,

3  products, and services, (c) are intimately familiar with Edifecs's software programs, object

4  codes, and related proprietary material, and (d) have worked on integration of Edifecs's software

5  products into TIBCO solutions for customers.  *Id.*  They have used and relied on (or will use and

6  rely on) Edifecs's confidential information in working on developing, modifying, integrating,

7  and improving Foresight's competing products.  *Id.* at ¶ 24.  Whether intentional or inadvertent,

8  Edifecs's confidential, proprietary and trade secret information will be (if it has not already been)

9  disclosed to and used by Foresight in violation of TIBCO's nondisclosure obligations.  *Id.*

10        Despite Edifecs's repeated requests, TIBCO has refused to take commercially reasonable

11  steps to ensure protection of Edifecs's confidential information, including preventing improper

12  use or disclosure to those working on Foresight's competing products and services.  *Id.* at ¶ 25.

13  As a result, Edifecs faces imminent threat that its confidential, proprietary and trade secret

14  information will be, if it has not already been, disclosed to a competitor and used by Foresight to

15  improve its products and unfairly compete with Edifecs.  *Id.*  By failing to take commercially

16  reasonable steps, TIBCO is violating its standard of care to protect Edifecs's confidential

17  information.  *Id.* at ¶ 26.  Absent TIBCO and Foresight segregating the sources of Edifecs's

18  confidential information (including information systems and personnel) from Foresight,

19  Edifecs's confidential, proprietary and trade secret information is at risk of improper use or

20  disclosure.  *Id.* at ¶ 27.  This will cause severe and irreparable harm to Edifecs.  *Id.* at ¶ 28.

21  **F.    Edifecs's Complaint and Expedited Discovery Request**

22        Edifecs filed its Complaint alleging claims for breach of contract, breach of the duty of

23  good faith and fair dealing, violation of Washington's UTSA, and injunctive relief.  Compl.

24  ¶¶ 29-49.  The Complaint alleges that TIBCO has breached the duty of care imposed by the

25  License Agreement and the implied duty of good faith and fair dealing imposed by law.  *Id.* at

26  ¶¶ 26, 31-32, 36.  The Complaint further alleges that TIBCO has violated, or is in imminent

27  danger of violating, the UTSA by disclosing Edifecs's confidential, proprietary and trade secret

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM

47417-005 \ 520747.doc                                                    -5-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1    information to Edifecs's competitor. *Id.* at ¶ 43. The Complaint prays for damages and

2    injunctive relief (and specifically includes a claim for injunctive relief). *Id.* at § V.B.

3    Because the acquisition of Foresight recently occurred, the "new" Foresight product is

4    not yet in the marketplace. Thus, Edifecs is not able to determine whether its valuable trade

5    secrets have already been misappropriated. The threat of misappropriation is real and imminent,

6    but Edifecs needs information and documents only in TIBCO's possession, custody and control

7    to determine if there has been actual misappropriation. Because of this, Edifecs filed a motion

8    for expedited discovery on March 4, 2010 (noted for hearing on March 19, 2010). Dkt. # 3. The

9    briefing has been completed, and the motion is pending before the Court.

### III.   ARGUMENT

**A.    Edifecs Sufficiently Pleads and States a Claim for Relief on All Causes of Action**

   **1.    Legal Standard for Motions to Dismiss**

13   To state a claim under the federal pleading standards, the Complaint must set forth a

14   "short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R.

15   Civ. P. 8(a)(2). Factual allegations are accepted as true and must provide fair notice of the

16   claims and the grounds upon which they rest. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

17   (2007). The complaint need *not* contain detailed factual allegations, but only more than "a

18   formulaic recitation of the elements of a cause of action." *Id.*

19   To avoid dismissal under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter,

20   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ---

21   U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570)). "The plausibility

22   standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility."

23   *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Stated differently, the factual

24   allegations need only "be enough to raise a right to relief above the speculative level." *Twombly,*

25   550 U.S. at 555. As discussed below, Edifecs has averred ample facts to easily cross "the line

26   from conceivable to plausible." *Iqbal*, 129 S.Ct at 1952 (citing *Twombly*, 550 U.S. at 570).

27

---

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM

47417-005 \ 520747.doc                                          -6-

**2.       Contract Claims Under California Law**

The terms of the License Agreement are governed by California law.  Daniels Dec., Ex. A at ¶ 13(e).  Edifecs pleads sufficient factual matter and all essential terms under California law for its contract claims.  *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)).  Edifecs avers that (1) the parties entered into the License Agreement; (2) Edifecs performed its duties; (3) TIBCO breached the contract by failing to take commercially reasonable steps to protect Edifecs's confidential information, as required by the duty of care imposed in the License Agreement; and (4) TIBCO's breach of its duty has harmed or poses imminent threat of irreparable harm to Edifecs.  Compl. ¶¶ 10-11, 16, 25-26, 30-33, 36-38. Accepting these allegations as true, as required on a 12(b)(6) motion, Edifecs adequately states a claim for breach of contract and its related breach of the duty of good faith and fair dealing.

TIBCO argues that the License Agreement allows "TIBCO to engage in competitive activities against Edifecs" with no further restrictions.  Motion at 1, 5-6, 11.  This is wrong on its face.  Section 11(a) of the License Agreement specifically requires each party to "use a commercially reasonable degree of care . . . to avoid disclosure of any Confidential Information of the other party."  Daniels Dec., Ex. A at ¶ 11(a).  Any competitive conduct by TIBCO is expressly limited by and subject to the duty to apply a commercially reasonable standard of care. In the industry, there are norms for what a commercially reasonable degree of care entails.  For example, the parties limit employees' access and require confidentiality agreements.  Compl. ¶ 15.  TIBCO's contention that the "contract does not require TIBCO to segregate employees involved in such activities, segregate computer networks, or impose any other, similar restrictions" as they are not in the contract (Motion at 12) would render meaningless and superfluous the duty to exercise a "commercially reasonable degree of care."  Contract terms must be interpreted to avoid such result.  Cal. Civ. Code § 1641; *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1785 (1993).[4]

---

[4] As TIBCO observes, the implied covenant exists "to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made."  Motion at 12 (quotations omitted).  That is exactly what TIBCO is trying to do by arguing that its competitive conduct is limitless.  TIBCO's attempt to

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc                                     -7-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

### 3.   Uniform Trade Secrets Act Claim Under Washington Law

Edifecs alleges its trade secret misappropriation claim under Washington's UTSA, RCW 19.108 *et seq.*, as the contractual choice of law clause does not extend to statutory claims. *See* Section III.B.1.  Under Washington's UTSA, misappropriation includes disclosure or use of a trade secret of another without consent by a person who has a duty to maintain its secrecy or limit its use.  RCW 19.108.010(2)(b)(ii)(B).  Washington law authorizes relief in cases of actual *or threatened* misappropriation.  RCW 19.108.020.  Edifecs properly states a claim for actual or threatened misappropriation by alleging that (1) TIBCO obtained Edifecs's trade secrets through a confidential relationship, (2) TIBCO is under a duty to maintain the secrecy of these trade secrets, (3) it has breached that duty, (4) by its breach, TIBCO has actually disclosed or threatens to disclose or allow misuse of Edifecs's trade secrets, and (5) this poses severe and irreparable harm to Edifecs.  Compl. ¶¶ 10-11, 13, 15, 22, 23-28, 39-46.  Edifecs's trade secrets are at real risk of misappropriation (if they have not already been misappropriated) through their availability to Foresight on TIBCO's information systems and through the TIBCO employees who are intimately familiar with Edifecs's technologies, software, and other confidential, proprietary material.  *Id.* at ¶¶ 21, 23-25.

Additionally, Edifecs relies on TIBCO's refusal to take commercially reasonable steps to protect Edifecs's confidential information, TIBCO's rejection of the alternatives Edifecs offered to protect its confidential information (including termination of the License Agreement and return of all confidential Edifecs material in TIBCO's possession), TIBCO's plan to use the same employees with intimate knowledge of Edifecs's trade secrets to work on Foresight's products, and the misdirected email to Japinder Singh suggesting violations of his non-compete/non-disclosure agreement with Edifecs.  *Id.* at ¶ 22-25.  These allegations together state a claim for trade secret misappropriation that is "plausible on its face." *Ashcroft*, 129 S.Ct. at 1949.[5]

---

improperly expand the License Agreement and deprive Edifecs of the benefit of its bargain, *i.e.*, protection for its confidential and trade secret information, supports Edifecs's breach of duty of good faith and fair dealing claim.

[5] In addition to these allegations, Edifecs can further rely on the inevitable disclosure allegations in the Complaint as alternative proof for its misappropriation claim.  *See* Section III.D, below.  However, not only is this unnecessary

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc                              -8-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1  TIBCO complains that Edifecs "avoids making a firm allegation that TIBCO has engaged

2  in *actual* trade secret misappropriation." Motion at 4, 1. However, that is not required under

3  either trade secret law or the federal pleading requirements. Edifecs does not make a firm

4  allegation because it cannot yet know with certainty that TIBCO has misappropriated, or

5  specifically what it has misappropriated, as it has not had a chance at discovery. At this stage,

6  the either/or allegation is allowed as TIBCO has threatened misappropriation, and may or may

7  not have also actually misappropriated Edifecs's trade secrets.

8  ### 4.   Injunctive Relief

9  Edifecs agrees that a claim for injunctive relief is not free-standing. *See* Motion at 20.

10  But because its contract and statutory claims are sound, the claim for injunctive relief is likewise

11  sound. *See generally U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 614-15

12  (1999) (granting claim for injunction).[6] TIBCO's attempt to dismiss the injunction claim

13  therefore fails.

14  TIBCO improperly focuses on the scope of a potential injunction — an issue that will not

15  come before the Court until Edifecs files a motion for injunctive relief. Motion at 8-9 and 11.

16  Although irrelevant on a motion to dismiss, TIBCO's characterizations of Edifecs's proposed

17  injunctive relief are also incorrect. Edifecs's request that TIBCO be ordered to segregate sources

18  of its confidential information, including information systems and personnel intimately familiar

19  with Edifecs's trade secrets, from Edifecs's direct competitor (Compl. § V.B) is not a

20  "restatement of the 'inevitable disclosure' allegation (Motion at 11); it is part of the duty to take

21  commercially reasonable steps to prevent improper use or disclosure. Nor would all injunctive

22  relief constitute a restraint on employee mobility, as TIBCO seems to suggest (Motion at 9). For

23  example, ensuring that Foresight employees have no access to Edifecs's trade secret material on

24

25  because Edifecs sufficiently states a claim for actual or threatened misappropriation, but the proper place for Edifecs to assert the inevitable disclosure doctrine is on a motion for injunctive relief. *See* Section III.C.2, below.

26  [6] TIBCO also argues that there is no federal law for injunctions (Motion at 20). In federal court, federal law governs

27  the grant of injunctive relief. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (federal courts sitting in diversity apply federal procedural law); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (setting forth standard for preliminary injunction under federal law).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM
47417-005 \ 520747.doc                                                    -9-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

TIBCO's networks does not in any way infringe on employee mobility.  Likewise, segregating

(i) TIBCO employees who worked with Edifecs's trade secrets but will not work on Foresight's

products from (ii) employees working on Foresight, would not restrain employee mobility.  The

segregation of a small handful of TIBCO engineers (about a dozen out of 2,000) who worked

with and became intimately familiar with Edifecs's trade secrets from working on one specific

set of products at TIBCO (*i.e.*, Foresight's products) is also not such an undue restraint on

employee mobility.  Despite TIBCO's arguments (Motion at 8-9), an injunction can be tailored

to protect Edifecs's trade secret information while not immobilizing employees at TIBCO.  But

these issues are not properly before the Court on this Motion.  Rather, they are appropriate on a

motion for injunctive relief, after Edifecs has conducted discovery so it and the Court know the

extent of harm and can craft proper relief.

### 5.    Allegations TIBCO Claims Edifecs Did Not Make

TIBCO provides a host of facts that Edifecs supposedly did not allege.  Motion at 4-5.

But Rule 8 does not require such allegations.  Moreover, those facts are inapplicable,

unnecessary, or actually pled by Edifecs, as follows:

- Edifecs does not allege "theft of a customer list or technical files."  Motion at 4. Confidential technical files and other trade secrets were provided to TIBCO under the License Agreement, so TIBCO obtained this material without any need for "theft." Thus, there is no need for Edifecs to make a "theft" allegation.

- Edifecs does not allege "solicitation of customers."  *Id*.  Edifecs is not claiming that TIBCO is soliciting its customers, so it obviously has not included such an allegation.

- Edifecs does not allege "marketing of a copycat product." *Id*.  Edifecs could not make such an allegation, as it has no way of knowing, without discovery, whether its products have been copied yet, and any marketing has not yet occurred (as TIBCO is in the phase of transitioning and integrating Foresight).  Edifecs is not required to wait until TIBCO actually copies and markets its products before seeking relief.

- Edifecs does not allege that "its claimed secrets are compatible or interoperable with Foresight's own products" or "that Foresight lacks similar, pre-existing information of its own."  Motion at 4-5.  Such allegations are unnecessary.  As Edifecs alleges, without proper segregation and protections (which are required by the duty of care in the License Agreement), Edifecs's direct competitor has access to its confidential and proprietary trade secret information.  Compl. ¶¶ 22-25.  Rule 8 does not require Edifecs to elaborate on any details about compatibility or interoperability of products,

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc                                    -10-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

and regardless of whether Foresight has its own products, Edifecs's trade secrets can be misappropriated to improve and modify such products.

- Edifecs does not allege "that TIBCO and Foresight in fact have a plan to copy any secret aspect of an Edifecs product." Motion at 5. This is also unnecessary, and Edifecs would need discovery to know if it is true. TIBCO's refusal to take necessary steps to protect Edifecs's information, as well as TIBCO's plan to use the same employees with intimate knowledge of Edifecs's trade secrets to work on Foresight's products — facts Edifecs alleges (Compl. ¶¶ 23-25) — are more than sufficient.

- Contrary to TIBCO's assertion, Edifecs <u>does</u> allege that TIBCO employees who worked with Edifecs's trade secrets over the last decade know "the inner workings of [] Edifecs products." Compl. ¶ 23. Edifecs does not allege that such employees are "in fact engaged in developing a copycat product" (Motion at 5) because Edifecs needs discovery before alleging it. There would be no way Edifecs would otherwise know this until too late, *i.e.*, when the copycat product appears in the marketplace.

In short, TIBCO's arguments about allegations Edifecs should have made to survive a 12(b)(6) motion are misplaced. The Complaint's allegations are adequate under *Iqbal/Twombly*.

**B.    California Law Does Not Govern the Statutory Claim**

   **1.    The Choice of Law Provision Only Applies to the Contract Claims**

   TIBCO contends that California law applies to all claims, and bars relief. But the choice of law provision in the License Agreement, which was drafted by TIBCO, is narrowly drawn so California law only governs the contract claims. That provision provides: "The Agreement shall be governed by and construed in accordance with the laws of California." Daniels Dec., Ex. A at ¶ 13(e). It specifically does <u>not</u> extend to all claims relating to or arising out of the License Agreement; rather, it is limited to construction of the terms of the License Agreement. Even TIBCO's cited authority recognizes that "narrow choice of law provisions have been held to apply only to the parties' contractual relationship" and do "not apply to the plaintiff's tort claims." *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.,* 795 F. Supp. 151, 157 (W.D. Pa. 1992) (citing cases with provisions similar to the one in the License Agreement).[7]

---

[7]  In a thinly-veiled attempt to "inextricably entangle" Edifecs's statutory trade secret claim with the License Agreement, TIBCO characterizes the License Agreement — which covers licensing, product development, maintenance, support, and numerous other technical intellectual property issues — as a "confidentiality contract." Motion at 16. But regardless of how TIBCO labels the parties' agreement, the point remains that the contractual choice of law provision does not extend California law beyond the terms of the License Agreement.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

The parties, and TIBCO in particular, could have made the provision broader — like the provisions in the cases TIBCO cites in arguing for a broad construction. *See, e.g., Composiflex*, 795 F. Supp. at 155 (agreement to be "construed in accordance with the laws of the State of California as to all matters, including, but not limited to, matters of validity, construction, effect, or performance"). But they did not. Rather, the parties agreed on a narrow provision that only applies to the contract claims. *See id.* at 157; *Caton v. Leach Corp.*, 896 F.2d 939, 943 & n.3 (5th Cir. 1990) (California law only applied to contract claim because of "narrow choice of law clause [that] does not address the entirety of the parties' relationship"); *Access2go, Inc. v. Hipage Co., Inc.*, 2010 WL 55907, at *5 (C.D. Ill. Jan. 4, 2010) (rejecting argument that choice of law provision like the one here is "broadly stated" and encompasses non-contractual claims; "The sentence unambiguously designates Illinois law to govern and construe the *Service Agreement*. Hipage's claims do not involve construction of the Service Agreement.") (citing *Kuehn v. Childrens Hosp.*, 119 F.3d 1296, 1302 (7th Cir. 1997).

Edifecs never agreed to subject itself to California law on tort or statutory claims. Nor should the Court rewrite the contract to subject Edifecs's UTSA claim to California law, particularly when TIBCO drafted the License Agreement. *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal. App. 4th 1466, 1476 (2010) ("We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there"); *Powers v. Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1102, 1112 (1997) ("Where the language in a contract is ambiguous, the contract should be interpreted most strongly against the party who prepared it") (citations omitted).[8] Thus, while California law governs the contract claims, it does not apply to the UTSA claim.

### 2. Choice of Law Analysis Reaches the Same Result

A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S 487, 496 (1941). Under Washington's choice of

---

[8] *See also Dragt v. Dragt/DeTray, LLC*, 139 Wn. App. 560, 573 (2007) ("A court cannot, based on general considerations of abstract justice, make a contract for parties that they did not make for themselves") (citation omitted); *Felton v. Menan Starch Co.*, 66 Wn.2d 792, 797 (1965) (contracts construed against drafter) (citation omitted).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

law principles, the "most significant relationship" test is used to determine the applicable law when there is a conflict of laws. *Brewer v. Dodsun Aviation*, 447 F. Supp. 2d 1166, 1175-76 (W.D. Wash. 2006) (citation omitted). To determine the most significant relationship, the following factors are considered: (1) place of injury; (2) place of conduct causing injury; (3) location of parties; and (4) place where parties' relationship is centered. *Id.* The place of injury is Washington, as Edifecs is headquartered here. The place of conduct causing injury is California and Washington, as TIBCO is headquartered in California, but also has offices in Seattle and Spokane. The location of the parties is also both states, but more in favor of Washington as Edifecs only has offices in Washington, while TIBCO has offices in both. Finally, the relationship of the parties is centered in both Washington and California, as (i) the subject matter of the License Agreement mostly comes from Washington, including the license grant, software solutions, technical support, and maintenance, as Edifecs makes its products in Washington and provides services and support from here, while (ii) TIBCO mostly integrates Edifecs's material in California.

While both states have significant contacts, there is a presumption in favor of applying Washington law as it is the forum state, and TIBCO cannot overcome that presumption. *See id.* at 1175; *see also Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir. 1981) (the "significant relationship" test "embodies a presumption that the local law of the state where the injury occurred governs the rights and liabilities of the parties unless another state has a 'more significant relationship' to the occurrence or parties involved.") (quotations omitted).[9]

Washington's choice of law rules and the RESTATEMENT also recognize that a court "may be required to apply the law of one forum to one issue while applying the law of a different forum to another issue in the same case." *Brewer*, 447 F. Supp. 2d at 1175 (quotations omitted); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. d ("The courts have long recognized that they are not bound to decide all issues under the local law of a single state. . . . The rule of

---

[9] TIBCO cites five cases in support of its claim that the place of injury is the most important factor. Motion at 15. But notably, four out of the five cases applied the law of the forum. In other words, the place of injury supported and coincided with the presumption in favor of the law of the forum. Here, that is not the case.

1   this Section makes explicit that selective approach to choice of the law governing particular

2   issues.").  Thus, it *does* "make sense" to apply different law to the contract and UTSA claims,

3   despite TIBCO's disapproval (Motion at 17).

4          Moreover, given the narrow scope of the choice of law clause, it is more than "plausible"

5   (Motion at 17) that the parties intended California law to apply to the contract and left open the

6   possibility of a different state's law to apply to tort or statutory claims.  *See Inter-Tel, Inc. v.*

7   *Fulton Commc'ns Tel. Co., Inc.*, 2007 WL 1725349, at *5 (D. Ariz. June 12, 2007) (applying

8   Georgia law to tort claims; "mere fact that the parties have expressed a preference for Arizona

9   law in the dealer agreement does not create any 'justified expectations' or interest in 'uniformity

10  of result' with regard to their rights and liabilities for any tortious conduct.") (citing

11  RESTATEMENT § 6, cmt. g; *Id*. § 145, cmt. b).[10]  Edifecs — a Washington corporation that will

12  feel the repercussions of trade secret misappropriation here in Washington — may assert trade

13  secret misappropriation under laws intended for its protection, *i.e*., Washington's UTSA.  For

14  this reason, the UTSA claim proceeds under RCW 19.108.010 *et seq*.[11]

15  **C.     California Law Does Not Preclude Edifecs's Claims**

16          Even if California law applied to all causes of action, Edifecs still states a claim for

17  breach of contract, breach of the implied covenant, misappropriation of trade secrets, and

18  injunctive relief.  TIBCO attempts to use California's rejection of the inevitable disclosure

19  doctrine to dismiss all of Edifecs's claims.  Motion at 7-9. But this is a futile effort to get

20  significantly more mileage out of California's rejection than is warranted.

21          **1.     Edifecs's Claim for Misappropriation Survives Under California Law**

22          Edifecs states a UTSA claim under California law without reliance on the inevitable

23  disclosure doctrine.  As noted above, California law, like Washington law, authorizes relief in

24

25  [10] Nor do California's unique rules under the UTSA support California law.  *See* Motion at 17.  If anything, the opposite should be true.  Under the policy considerations of the RESTATEMENT, the ease of application of the law, the expectation of the parties, and the uniformity interests all support applying Washington law, which is more in line with the UTSA of other jurisdictions, instead of California's unique rules with additional procedural and other requirements.  *See* RESTATEMENT § 6.

26

27  [11] As discussed in Section III.C, below, Edifecs's claims are legally sound even if California law were to apply.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM

47417-005 \ 520747.doc                                       -14-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

cases of actual *or threatened* misappropriation.  Cal. Civ. Code § 3426.2(a).  In *Central Valley General Hospital v. Smith*, the court refuted defendant's contention that California's rejection of the inevitable disclosure doctrine prohibits an injunction based on threatened misappropriation.  162 Cal. App. 4th 501, 524 (2008).  The court explained that (1) such argument is inconsistent with Civil Code § 3426.2(a), which authorizes injunctions against threatened misappropriation; and (2) when the inevitable disclosure doctrine was considered and rejected by California, it was treated as "an alternative to proof of actual or threatened misappropriation."  *Id*.  For theses reasons, the court concluded:  "we do not equate the rejection of the inevitable disclosure doctrine with a rejection of the principle that threatened misappropriation may be enjoined."  *Id*. at 525; *see also Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1458, 1464 (2002).

Because the Complaint adequately alleges actual and/or threatened misappropriation of Edifecs's confidential and trade secret information (*see* Section III.A.3, above), Edifecs states a claim for relief under California law without implicating the inevitable disclosure doctrine.  *See Clorox Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954, 969-70 (E.D. Wis. 2009) (allegations similar to those by Edifecs found sufficient to state claim for threatened misappropriation under California law).  To be sure, TIBCO is right that a defendant's "mere possession" of trade secrets is insufficient.  Motion at 9 and 19 (citations omitted).  But that is not what Edifecs alleges here.  In addition to possession of Edifecs's trade secrets, Edifecs's claims are supported by TIBCO's actions (*e.g.*, acquisition of Edifecs's competitor), TIBCO's omissions (*e.g.*, failure to comply with contractual duty of care), TIBCO's intent (*e.g.*, to use the same handful of employees who for years worked with and gained intimate knowledge of Edifecs's trade secrets on Foresight's products), and the conduct of TIBCO's employees (*e.g.*, email to Japinder Singh suggesting violations of non-compete/non-disclosure agreement).  Complaint at ¶¶ 17-27.  In other words, Edifecs's allegations are not just speculations based on TIBCO's possession of its trade secrets, but rather, derive from TIBCO's actual conduct and its breach of duties, and plausibly state a claim for misappropriation.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc

-15-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

### 2.   TIBCO Misapplies California's Rejection of the Inevitable Disclosure Doctrine

Even if Edifecs relied solely on the inevitable disclosure doctrine (which it does not), California's rejection of the doctrine would not require dismissal.  It only would prevent Edifecs from obtaining an injunction that enjoins TIBCO's employees from working on Foresight's products, without proof of actual or threatened misappropriation.  *Cent. Valley Gen. Hosp.*, 162 Cal. App. 4th at 524 ("The inevitable disclosure doctrine allows a trade secret owner to prevent a former employee from working for a competitor despite the owner's failure to prove the employee has taken or threatens to use trade secrets.") (quotations omitted); *Whyte*, 101 Cal. App. 4th at 1458 ("The inevitable disclosure doctrine results in an injunction prohibiting employment"); *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (doctrine allows plaintiff to enjoin employee from working for another employer by demonstrating the employment will inevitably require use of plaintiff's trade secrets).

The inevitable disclosure doctrine — when properly applied — arises in the context of an injunction.  California's rejection of the doctrine thus does not affect the claim for damages on any of Edifecs's causes of action; nor would it preclude the injunction claim either, as long as the requested relief does not bar employee mobility under California law.  Given this scope, it is no surprise that out of the 18 cases TIBCO cites relating to the inevitable disclosure doctrine, all but two involve injunctions, as apparent from most of TIBCO's own parentheticals.[12]

---

[12] *See Air Prod. & Chems., Inc. v. Johnson*, 442 A.2d 1114, 1117 (Penn. Ct. App. 1982) (affirming injunction); *Bayer Corp. v. Roche Molecular Sys.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999) (denying injunction); *Bendinger v. Marshalltown Trowell Co.*, 944 S.W.2d 468, 475 (Ark. 1999) (denying injunction); *Cent. Valley Gen'l Hosp.*, 162 Cal. App. 4th at 524 (denying injunction); *Clorox.*, 627 F. Supp. 2d at 972 (denying injunction); *Cont'l Car-Na-Var v. Moseley*, 24 Cal.2d 104, 107 (1942) (reversing injunction); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1326, 1338 (S.D. Fla. 2001) (denying injunction); *Desert Sun Net LLC v. Kepler*, 2006 WL 3091170, at *1 (W.D. Wash. Oct. 27, 2006) (denying injunction); *E.I. DuPont de Nemours and Co. v. Am. Potash & Chem. Corp.*, 200 A.2d 428, 431 (Del. Ch. 1964) (granting injunction); *Earthweb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 310, 317 (S.D.N.Y. 1999), *aff'd after remand,* 2000 WL 1093320 (2d Cir. 2000) (denying injunction and dissolving TRO); *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1275 (2009) (permanent injunction trial; judgment for defendants); *IBM Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 101 (D. Minn. 1992) (denying injunction); *Mayview Corp. v. Rodstein*, 480 F.2d 714, 718 n.7 (9th Cir. 1973) (reversing injunction); *PepsiCo*, 54 F.3d at 1270-71 (granting injunction); *PCS Inc. v. Reiss*, 111 F. Supp. 2d 252, 256 (W.D.N.Y. 2000) (denying injunction); *Whyte*, 101 Cal. App. 4th at 1464 (affirming denial of preliminary injunction, and dissolving TRO).  *But see Universal Analytics, Inc. v. MacNeal-Scwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) (summary

---

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc                                           -16-

STOKES LAWRENCE, P.S.
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1       *Clorox Company* (cited by Motion at 14, 18) is instructive because even though it

2  involved injunction motions it also had a cross motion to dismiss.  In a trade secret

3  misappropriation case, Clorox alleged its competitor was threatening to misappropriate and may

4  have already misappropriated Clorox's trade secrets by hiring away one of its vice presidents.

5  627 F. Supp. 2d at 957.  Clorox filed an emergency TRO motion and preliminary injunction, as

6  well as motions for expedited discovery and a protective order.  *Id*. at 958.  While those motions

7  were pending, defendant filed a motion to dismiss, arguing — like TIBCO — that Clorox failed

8  to state a claim because (i) California law applied, (ii) it rejects the inevitable disclosure doctrine,

9  and (iii) Clorox had not alleged that defendant actually acquired or used any of Clorox's trade

10  secrets or was threatening to do so, but instead, relied on the inevitable disclosure doctrine.  *Id*. at

11  965, 969.  Like Edifecs's complaint, Clorox's complaint alleged that defendant "has

12  misappropriated, and/or has threatened to misappropriate Clorox's trade secrets."  *Id*. at 969

13  (citation omitted).  The court agreed that California law applied, which rejects the inevitable

14  disclosure doctrine.  *Id*. at 968-69.  The court continued:

15          ***Clorox has set out a claim for relief based almost entirely on its legal theory of
16  inevitable disclosure.  However, notwithstanding Clorox's legal theory, and
        making all reasonable inferences in favor of Clorox, the court finds that
17  Clorox has set forth the bare minimum facts to state a claim of
        misappropriation of trade secrets.***  The complaint alleges that [the vice
18  president] obtained trade secrets, and that 'upon information and belief, [the
        vice president and defendant] have used, disclosed or threatened to use or
19  disclose Clorox's confidential, proprietary, and trade secret information with
        full knowledge that this information was acquired under circumstances giving
20  rise to a duty to maintain its secrecy or limit its use."  [citation to complaint
        omitted] . . . .  Although the factual allegations contained in the complaint, if
21  true, may not ultimately establish a misappropriation claim without the benefit
        of the inevitable disclosure theory, the court is unable to find that Clorox cannot
22  prove any set of facts to support its actual or threatened misappropriation claim.

23  *Id*. at 969-70 (emphasis added).  The court therefore denied the motion to dismiss.  *Id*. at 970.

24  But based on California's rejection of the inevitable disclosure doctrine, the court also denied the

25  injunction (while granting Clorox's motion for expedited discovery).  *Id*. at 970, 972.

26

27  judgment motion, but no mention of "inevitable disclosure"), *aff'd*, 914 F.2d 1256 (9th Cir. 1990); *GlobeSpan, Inc.
v. O'Neill*, 151 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001) (granting motion to dismiss).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM

47417-005 \ 520747.doc

-17-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

TIBCO's own authority thus reinforces three important points.  First, the inevitable disclosure doctrine goes hand in hand with a preliminary injunction motion and rejection of the doctrine does not have much impact on a motion to dismiss.[13]  Second, even under California law, inevitable disclosure allegations may suffice to state a claim; they are not, as TIBCO argues, absolutely prohibited (Motion at 1) or "sanctionable" (Motion at 7-8).[14]  Third, plaintiffs may proceed with claims of misappropriation (and use "either/or" allegations) despite California's rejection of the inevitable disclosure doctrine.  TIBCO's attempt, in conflict of its own authority, to cast California's rejection of the inevitable disclosure doctrine as the death knell for all of Edifecs's claims thus easily fails.

### 3.    The Rationale for California's Rejection of the Doctrine Also Does Not Apply

The inevitable disclosure doctrine seeks to "prevent a former employee from working for a competitor" based on recognition that the employee inevitably will use or disclose trade secrets, even without requiring a showing that the employee has improperly used or will use trade secrets.  *Cent. Valley Gen'l Hosp.*, 162 Cal. App. 4th at 524; *Whyte*, 101 Cal. App. 4th at 1461-62.  California rejects the doctrine because of its strong statutory policy against non-compete agreements and in favor of employee mobility.  Cal. Bus. & Prof. Code § 16600.  But that rationale does not apply here.

---

[13] There is a single case TIBCO cites that involved dismissal of claims based on California's rejection of the inevitable disclosure doctrine.  In *GlobeSpan*, the district court dismissed the claim for trade secret misappropriation because the allegations exclusively relied on inevitable disclosure.  151 F. Supp. 2d at 1235-36.  *GlobeSpan* is easily distinguishable because plaintiff did not make allegations of threatened misappropriation — only inevitable disclosure allegations.  *Id.*  This federal decision was also issued before California courts made clear that rejection of the inevitable disclosure doctrine does not preclude claims for threatened misappropriation.  *Cent. Valley Gen'l Hosp.*, 162 Cal. App. 4th at 524.  Thus, *GlobeSpan* is of limited value.

[14] In the case TIBCO cites to support the proposition that inevitable disclosure allegations are sanctionable, the plaintiff admittedly filed the action "as a preemptive strike and for an anticompetitive purpose," and the plaintiff continued the suit *through trial* without any support for actual or threatened misappropriation.  *FLIR Sys.*, 174 Cal. App. 4th at 1274, 1276.  Plaintiff proceeded only on the inevitable disclosure doctrine, even though California rejects the doctrine and jthere clearly was no "inevitable disclosure" when defendants had even abandoned their competitive business venture.  *Id.* at 1276-77.  At trial, the plaintiff's president could not even say why the lawsuit was going on a year-and-a-half later.  *Id.* at 1278.  Based on these unique circumstances, the court in *FLIR Systems* concluded there was (1) objective speciousness, and (2) subjective bad faith to support a bad faith misappropriation claim under Cal. Civ. Code § 3426.4.  *Id.* at 1275-76.  *FLIR Systems* is inapposite here.

---

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM

47417-005 \ 520747.doc

STOKES LAWRENCE, P.S.
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1    Edifecs does not seek to prevent any employees from working at TIBCO.[15]   Rather,

2    Edifecs seeks to protect its trade secret information, which California law — like Washington

3    law — strongly supports.  *See Whyte*, 101 Cal. App. 4th at 1462.  Indeed, California courts even

4    enforce covenants not to compete, which are generally barred under California law, "if necessary

5    to protect the employer's trade secrets."  *Id*. (quotations omitted).  Segregation of Edifecs's

6    confidential material from Foresight (including segregation of personnel) is necessary to prevent

7    misappropriation, not to limit freedom of employment mobility.  It is commercially reasonable

8    and necessary here to have such standard "clean room development" practices.

9           In addition, California courts have rejected the inevitable disclosure doctrine because of

10   the view that this doctrine rewrites the parties' agreement to include a covenant not to compete.

11   *Whyte*, 101 Cal. App. 4th at 1463; *see also* Motion at 8.  Edifecs's contract claims do not require

12   any revision or addition by the courts.  Rather, under the License Agreement itself, TIBCO has a

13   duty to take commercially reasonable steps to protect the confidentiality of Edifecs's material.

14   Daniels Dec., Ex. A at ¶ 11(a).  A breach of this duty gives rise to a claim by Edifecs

15   independent of a trade secret misappropriation claim.  Edifecs is entitled to hold TIBCO to its

16   contractual obligations, and California's rejection of the inevitable disclosure doctrine has no

17   bearing on that claim.  In short, the rationale behind California's rejection of the inevitable

18   disclosure doctrine does not apply here and does not preclude any of Edifecs's claims.

**D.    Washington Should Adopt the Inevitable Disclosure Doctrine**

20          Because the inevitable disclosure doctrine is properly considered on a motion for

21   injunctive relief, it is not properly before the Court at this time.  The Court therefore need not

22   resolve whether to approve the doctrine on this Motion.  However, if it were to consider the

23   issue, the Court should accept the doctrine.

---

[15] Notably, Edifecs did *not* file an action against TIBCO when TIBCO hired former Edifecs employees.  That kind of action would have implicated the rationale for California's rejection of the inevitable disclosure doctrine.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM

47417-005 \ 520747.doc                                   -19-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1

### 1.      Most Jurisdictions Recognize the Doctrine

The large majority of jurisdictions that have faced the issue have accepted some form of the inevitable disclosure doctrine.[16]   Indeed, 21 states allowed the doctrine as of 1999 (many others had not yet considered it).   *Bayer*, 72 F. Supp. 2d at 1118 (citing Stephen L. Sheinfeld & Jennifer M. Chow, *Protecting Employer Secrets and the Doctrine of Inevitable Disclosure*, 600 PLI/LIT 367 (1999)).   When rejecting the doctrine in California, the *Whyte* court acknowledged that "the majority of jurisdictions addressing the issue have adopted some form of the inevitable disclosure doctrine."   101 Cal. App. 4th at 1460 (citations omitted).   That was in 2002, after what TIBCO describes as the doctrine's alleged "high-water mark in the mid-1990s" (Motion at 2). Since then, courts in various jurisdictions have continued to recognize this doctrine.   *See* note 16, *supra.*   As TIBCO also admits, there are at least two instances (albeit unpublished cases) of Washington law recognizing the doctrine.   Motion at 14 (citing *Temco Metal Prod. v. GT Dev.*

---

[16] *See, e.g.,* **Arkansas**: *Bendinger v. Marshalltown Trowell Co.*, 994 S.W.2d 468, 474 (Ark. 1999); *Cardinal Freight Carriers, Inc. v. J.B. Hunt Transport Servs., Inc.*, 987 S.W.2d 642, 646 (Ark. 1999); **Connecticut**: *Minn. Mining & Mfg. Co. v. Francavilla*, 191 F. Supp. 2d 270, 278 (D. Conn. 2002); *Wesley Software Dev. Corp. v. Burdette*, 977 F. Supp. 137, 147 (D. Conn. 1997); *Branson Ultrasonics Corp. v. Stratman*, 921 F. Supp. 909, 913 (D. Conn. 1996); **Delaware:** *E.I. DuPont de Nemours*, 200 A.2d at 431; **Illinois**: *Strata Marketing, Inc. v. Murphy*, 740 N.E.2d 1166, 1070 (Ill. App. 2000); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001); *PepsiCo*, 54 F.3d at 1269; **Iowa**: *Am. Express Financial Advisors, Inc. v. Yantis*, 358 F. Supp. 2d 818, 833 (N.D. Iowa 2005); *Barilla Am., Inc. v. Wright*, 2002 WL 31165069, at *3 (S.D. Iowa Jul. 5, 2002); **Michigan**: *Allis-Chalmers Mfg. Co. v. Cont'l Aviation & Eng'g Corp.*, 255 F. Supp. 645, 654 (E.D. Mich. 1966); **Minnesota**: *FSI Int'l, Inc. v. Shumway*, 2002 WL 334409, at *8 (D. Minn. Feb. 26, 2002); *La Calhene, Inc. v. Spolyar*, 938 F. Supp. 523, 531 (W.D. Wis. 1996) (applying Minnesota law); **Missouri**: *H&R Block Eastern Tax Servs., Inc. v. Enchura*, 122 F. Supp. 2d 1067, 1076 (W.D. Mo. 2000); **New Jersey**: *Fluoramics, Inc. v. Trueba*, 2005 WL 3455185, at *8 (N.J. Super. Ch. Dec. 16, 2005); *Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*, 530 A.2d 31, 33 (N.J. Super. Ct. App. Div. 1987); **New York**: *I.B.M. Corp. v. Papermaster*, 2008 WL 4974508, at *7-8 (S.D.N.Y. Nov. 21, 2008); *Estee Lauder Co. Inc. v. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006); *Willis of New York, Inc. v. DeFelice*, 299 A.D.2d 240, 242-43 (N.Y. Sup. Ct. 2002); *DoubleClick, Inc. v. Henderson*, 1997 WL 731413, at *2-3, 5-6 (N.Y. Sup. Ct. Nov. 7, 1997); *Lumex, Inc. v. Highsmith*, 919 F. Supp. 624, 631, 636 (E.D.N.Y. 1996); *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 732 F. Supp. 370, 378 (S.D.N.Y. 1989), *aff'd*, 920 F.2d 171 (2d Cir. 1990); **North Carolina**: *Merck & Co. Inc. v. Lyon*, 941 F. Supp. 1443, 1457-58 (M.D.N.C. 1996); **Ohio**: *MP TotalCare Servs., Inc. v. Mattimoe*, 648 F. Supp. 2d 956, 968-69 (N.D. Ohio 2009); *Hydrofarm, Inc. v. Orendorff*, 905 N.E.2d 658, 663-64 (Ohio App. Ct. 2008); *Dexxon Digital Storage, Inc. v. Haenszel*, 832 N.E.2d 62, 68-69 (Ohio Ct. App. 2005); *Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268, 272, 275-76 (Ohio Ct. App. 2000); **Pennsylvania**: *Indus. Insulation Group, LLC v. Sproule*, 613 F. Supp. 2d 844, 857-58 (S.D. Tex. 2009 (applying Pennsylvania law); *First Health Group Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 236 (M.D. Pa. 2001); *Air Prods. & Chem.*, 442 A.2d at 1115-16; **Utah**: *Novell, Inc. v. Timpanogos Research Group, Inc.*, 46 U.S.P.Q.2d 1197, 1198-99 (Utah Dist. Ct. 1998).

---

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

47417-005 \ 520747.doc

*Corp.*, 2000 WL 556607, at *3 (D. Or. 2000) (applying Washington law)).  There are no cases of Washington rejecting the doctrine.[17]

Besides California, only a handful of other states have rejected the doctrine, including Louisiana and Massachusetts.[18]  Louisiana, like California, rejected the doctrine because of its statutory policy against non-compete agreements, La. Rev. Stat. 23:921.  *Standard Brands*, 264 F. Supp. at 265.  That statute has since been amended, however, so it is unclear where Louisiana would fall on the issue today.  Massachusetts rejected the doctrine because its trade secret law, unlike that in Washington and other UTSA states, does not allow injunctive relief in cases of threatened misappropriation, only actual misappropriation.  *Safety-Kleen Systems*, 233 F. Supp. 2d at 124 (citing Mass. Gen. Law 93 § 42A).  Unlike these states, Washington follows the majority of other jurisdictions in (1) endorsing restrictive covenants that are reasonable and narrowly tailored, and (2) authorizing relief for both actual and threatened misappropriation.  For these reasons, Washington would not follow the minority view on the inevitable disclosure doctrine.

Instead, Washington would follow the majority and adopt the doctrine despite TIBCO's inaccurate characterizations of it as "extreme" and "[i]ncreasingly met with judicial disfavor." Motion at 2, 13.  The idea of granting an injunction based on inevitable and unavoidable disclosure of trade secrets is not extreme or even new, as it dates back to at least 1902.  *See Harrison v. Glucose Sugar Refining Co.*, 116 F. 304, 311 (7th Cir. 1902); *see also Eastman Kodak Co. v. Powers Film Prods.*, 189 A. D. 556, 561 (N.Y. App. Div. 1919) (enforcing non-compete covenant where departing employee possessed information about secret film manufacturing processes and formulas that he would "inevitably" use in new job with

---

[17] The only case TIBCO is able to cite, *Desert Sun Net LL*, 2006 WL 3091170, at *8, did not even name the doctrine and instead involved general speculation in the context of an injunction.

[18] *See, e.g., Standard Brands, Inc. v. Zumpe*, 264 F. Supp. 254, 265 (E.D. La. 1967); *Safety-Kleen Sys., Inc. v. McGinn*, 233 F. Supp. 2d 121, 124 (D. Mass. 2002); *Del Monte Fresh Produce*, 148 F. Supp. 2d at 1337; *LeJeune v. Coin Acceptors, Inc.*, 849 A.2d 451, 471 (Md. 2004); *Gov't Tech. Servs., Inc. v. IntelliSys Tech. Corp.*, 1999 WL 1499548, at *1 (Va. Cir. Ct., Oct. 22, 1999).  *See also* G. Jankowski, *The Inevitable Disclosure Doctrine — Inability of Former Employees to Perform Without Disclosing Confidential Information*, 75 PENN. BAR ASS'N QUARTERLY 34 (Jan. 2004).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc

-21-

STOKES LAWRENCE, P.S.
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1   competitor); *B.F. Goodrich Co. v. Wohlgemuth*, 192 N.E.2d 99, 104-05 (Ohio Ct. App. 1963); *E.*

2   *I. DuPont*, 200 A.2d at 435-37.  The notion behind the doctrine has thus long been a part of trade

3   secret jurisprudence and Washington states would recognize this long history.

4       **2.**      **The Doctrine Provides Necessary Protection for Trade Secrets**

5         Washington courts also would recognize the important policy underlying the inevitable

6   disclosure doctrine.  Put simply, in some circumstances, the likelihood of an employee revealing

7   trade secrets (consciously or not) is so high and the harm sufficiently irreparable that a court may

8   enjoin the employment, or limit the scope of work, to prevent the disclosure from occurring.  The

9   reason so many courts have accepted this doctrine is that unless an employee has "an uncanny

10  ability to compartmentalize information," the employee will necessarily rely, intentionally or

11  inadvertently, on knowledge of the former employee's trade secrets in performing his or her new

12  job duties.  *PepsiCo*, 54 F.3d at 1269.  Even if an employee does not intentionally seek to

13  disclose confidential information, there is simply no way to leave behind special knowledge, and

14  the employee will inevitably draw upon such knowledge in serving the new employer.  *Id.*  This

15  is a serious problem if the employee has knowledge of trade secrets and the new and old

16  employers are direct competitors.

17        That is the case here.  Edifecs shared highly sensitive trade secrets with a handful of

18  employees at TIBCO in the context of a confidential relationship.  TIBCO acquired Foresight,

19  Edifecs's direct competitor.  Now, TIBCO's team of engineers who, for the past decade, worked

20  with and obtained intimate knowledge of Edifecs's trade secrets, are the *same* engineers who are

21  or will be working on Foresight's products and services, in direct competition with Edifecs.

22  These engineers will inevitably and unavoidably use and rely on their special knowledge of

23  Edifecs's trade secrets in developing, modifying, integrating, and improving Foresight's

24  competing products.  Whether intentional or inadvertent, Edifecs's confidential, proprietary and

25  trade secret information will be (if it has not already been) disclosed to and used by Foresight to

26  unfairly compete with Edifecs.  For this reason, Edifecs repeatedly requested that TIBCO

27  segregate these specific engineers and have them work on other TIBCO products, not Foresight.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM

47417-005 \ 520747.doc

-22-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

Even if these engineers have good intentions to avoid improper disclosure, it would not be enough. As one court explained, "the harm to the plaintiff cannot be avoided simply by the former employee's intention not to disclose confidential information, or even by his scrupulous efforts to avoid disclosure." *Marcam Corp. v. Orchard*, 885 F. Supp. 294, 297 (D. Mass. 1995) (granting preliminary injunction). The problem is that when these engineers go to work for Foresight, they will not

> go with a *tabula rasa* with respect to [Edifecs's] products, its development strategies, its marketing plans, . . . and other significant business information. It is difficult to conceive how all of the information stored in [an employee's] memory can be set aside as he applies himself to a competitor's business and its products. On the contrary, what [the employee] knows about [Edifecs] is bound to influence what he does for [Foresight], and to the extent it does, [Edifecs] will be disadvantaged.

*Id.* This is especially so as the knowledge the engineers have involves highly technical trade secrets including object codes, features, and functionalities that can be adapted to suit Foresight's products. *See Int'l Paper Co. v. Suwyn*, 966 F. Supp. 246, 258-59 (S.D.N.Y. 1997) (recognizing that irreparable harm may be greater in high-tech industries, particularly where present and former employers "endeavoring to develop the identical product" and "employee had learned exactly how [his former employer] was making the [product], including all details concerning the production process").

Because of this, a simple injunction prohibiting the use and disclosure of secret information would be inadequate to protect Edifecs against disclosure to Foresight through the TIBCO employees. *See, e.g.*, *Allis-Chalmers Mfg.*, 255 F. Supp. at 654; *E.I. DuPont*, 200 A.2d at 435-37 (simple injunction inadequate), *PepsiCo*, 54 F.3d at 1270 (employee cannot help but rely on PepsiCo's trade secrets in performance of his duties for competitor). The inevitable disclosure doctrine seeks to provide some meaningful protection of trade secrets in such situations by allowing injunctive relief restricting the former employee's work for a reasonable period of time (and in a reasonable manner), even without a restrictive covenant. This kind of protection comports with the general policy of preserving the secrecy of trade secrets and

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc

-23-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

1   prohibiting unfair competition.  For these reasons, if the Court addresses the doctrine here, it

2   should hold that Washington law would adopt the doctrine to remain true to Washington's

3   commitment to protect trade secrets.

4                                    **IV.   CONCLUSION**

5          For all the above reasons, Edifecs respectfully requests that the Court deny Defendant's

6   Motion to Dismiss Complaint in its entirety, and instead grant Edifecs's previously-filed Motion

7   for Expedited Discovery (Dkt. #3).  If the Court nonetheless grants TIBCO's Motion, it should

8   do so with leave to amend the Complaint.

9          DATED this 19th day of April, 2010.

10                                          STOKES LAWRENCE, P.S.

11

12                              By:  s/Aneelah Afzali
                                     Thomas A. Lerner (WSBA # 26769)
13                                   Scott A.W. Johnson (WSBA # 15543)
                                     Shelley M. Hall (WSBA # 28586)
14                                   Aneelah Afzali (WSBA #34552)
                               Attorneys for Plaintiff Edifecs Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT -
10-0330 RSM
47417-005 \ 520747.doc                          -24-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2010, I caused the foregoing *Opposition to Defendant's Motion to Dismiss Complaint* to be:

☒ electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Aneelah Afzali      aneelah.afzali@stokeslaw.com, dll@stokeslaw.com
Britton F Davis      bdavis@wsgr.com, rcarter@wsgr.com, srobinson@wsgr.com
Charles T. Graves      tgraves@wsgr.com
James A DiBoise      jdiboise@wsgr.com, cjohnston@wsgr.com
Jimmy A. Nguyen      janguyen@wsgr.com
Scott A.W. Johnson      sawj@stokeslaw.com, klc@stokeslaw.com, wah@stokeslaw.com
Thomas Lerner      tom.lerner@stokeslaw.com, michiko.chinen@stokeslaw.com

☐ mailed by first class United States mail, postage prepaid, to the following:

☐ hand delivered to the following:

☐ e-mailed and mailed by first class United States mail, postage prepaid, to the following:

☐ faxed and mailed by first class United States mail, postage prepaid, to the following:

/s/ Aneelah Afzali
Aneelah Afzali
Attorney for Plaintiff
Stokes Lawrence, P.S.
800 Fifth Avenue, Suite 4000
Seattle, WA  98104
(206) 626-6000
Fax:  (206) 464-1496
AA@stokeslaw.com

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10-0330 RSM

47417-005 \ 520747.doc

-25-

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000