1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

EDIFECS INC., a Washington
corporation,

CASE NO. C10-330 RSM

11

Plaintiff,

ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS AND GRANTING
PLAINTIFF LEAVE TO AMEND
COMPLAINT

12

v.

13

TIBCO SOFTWARE INC., a Delaware
corporation,

14

15

Defendant.

16

17

**I. INTRODUCTION**

18

        This matter is before the Court upon defendant's Motion to Dismiss Pursuant to Fed. R.

19

Civ. P. 12(b)(6). Dkt. # 21. Defendant asks the Court to dismiss plaintiff's claims for trade secret

20

misappropriation, breach of contract, and injunctive relief. After hearing oral argument on

21

December 3, 2010 and having reviewed the parties' memoranda, the Court GRANTS

22

defendant's motion to dismiss plaintiff's complaint with leave to amend.

23

24

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO
AMEND COMPLAINT - 1

## II. BACKGROUND

This case arises from defendant's acquisition of plaintiff's chief competitor in the healthcare software solutions industry. Dkt. # 1, ¶ 2. Plaintiff alleges that the acquisition significantly threatened the confidentiality of its proprietary software technology held by the defendant under various licensing agreements. Plaintiff Edifecs Inc. ("Edifecs"), a Washington corporation, brought this diversity suit for breach of contract and trade secret misappropriation against defendant TIBCO Software, Inc. ("TIBCO"), a Delaware corporation with principal place of business in Palo Alto, California. The complaint was filed March 22, 2010. Dkt. # 1.

Edifecs, a software development and consulting company, entered into various licensing agreements with TIBCO, a business software company, beginning in 2001. Under the terms of the parties' license agreement, TIBCO was granted a license to "use, copy, manufacture and distribute object code for several of Edifecs's software products." Dkt. # 1, ¶ 11. The license also granted to TIBCO the right to bundle Edifecs object code with TIBCO products. *Id.* Due to the confidential and proprietary nature of the information shared between parties, the license agreement expressly prohibited the "use, or disclosure to any person, either during the term or after the termination of [the License Agreement], any Confidential Information except for purposes consistent with the administration and performance of a party's rights or obligations hereunder, or required by law." *Id.* at ¶ 13. Furthermore, the parties expressly agreed that each would "use a commercially reasonable degree of care . . . to avoid disclosure of any Confidential Information of the other party." *Id.* at ¶ 15.

On January 8, 2010, TIBCO publicly announced the acquisition of the Foresight Corporation as a separate subsidiary. *Id.* at ¶ 19. Because Foresight is Edifecs's chief competitor, Edifecs directed a letter to TIBCO listing Edifecs's proprietary and confidential information and

reminding TIBCO of its duty to prevent disclosure as per the license agreement. *Id.* at ¶ 20.
Edifecs proposed several "reasonable steps" for TIBCO to implement to ensure that no
proprietary information fell into Foresight employee hands. *See id.* at ¶ 21-22. Edifecs alleges
that TIBCO's refusal to implement these reasonable steps constituted a breach of its contractual
duty to protect Edifecs's trade secrets. More specifically, Edifecs alleges that by failing to
segregate Foresight employees from TIBCO employees that have had some level of involvement
with Edifecs's proprietary material, TIBCO (1) breached its express obligation to use a
commercially reasonable degree of care to protect the material from disclosure, (2) breached its
implied duty of good faith and fair dealing, and (3) violated the Washington Uniform Trade
Secrets Act (WUTSA), RCW 19.108.010 *et seq.*, for trade secret misappropriation. *Id.* at ¶¶ 23-
46. Thus, Edifecs requests preliminary and permanent injunctive relief to prevent TIBCO
employees having knowledge of Edifecs's trade secrets from commingling with Foresight
employees.

TIBCO brought this 12(b)(6) motion to dismiss all four of plaintiff's causes of action.[1] It
argues that under each cause of action Edifecs fails to make anything but speculative claims of
future misuse of proprietary information.

## III. DISCUSSION

### A. Motion to Dismiss Standard

In reviewing a Rule 12(b)(6) motion to dismiss, the court must determine whether a
plaintiff alleges sufficient facts to support a claim for relief. *Broam v. Bogan*, 320 F.3d 1023,
1033 (9th Cir. 2003). Construing facts in the light most favorable to the plaintiff, the court
should "accept as true all material allegations in the complaint [and] any reasonable inferences

---

[1] Edifecs lists Injunctive Relief as its fourth cause of action.

1   to be drawn from them." *Broam*, 320 F.3d at 1028 (internal citations omitted).  A complaint

2   need not include detailed allegations, but it must have "more than labels and conclusions, and a

3   formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

4   *Twombly*, 550 U.S. 544, 555 (2007).  Furthermore, "where the well-pleaded facts do not permit

5   the court to infer more than the mere possibility of misconduct, the complaint has alleged—but

6   it has not 'show[n]—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

7   1951 (2009).

8   **B.  Choice of Law**

9          Neither party disputes that Edifecs's contract claims should be evaluated under California

10  law pursuant to a choice of law clause in the licensing agreement.  However, the parties disagree

11  about whether California law applies to Edifecs's tort-based trade secret misappropriation claim.

12         For diversity actions arising under 28 U.S.C.  § 1332, federal courts apply "the forum

13  state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 f.3d

14  493, 495 (9th Cir. 2002). In Washington, courts must first determine whether an actual conflict

15  of law exists before engaging in the choice of law analysis. *Seizer v. Sessions*, 132 Wash. 2d 642,

16  648 (1997). If no actual conflict of law exists, the presumptive local law applies. *Id.* at 649.  An

17  actual conflict arises in cases where "the result of the issues is different under the laws of the two

18  states." *Id.* at 648. In the event that an actual conflict exists, Washington courts apply the "most

19  significant relationship" test of the Restatement (Second) of Conflict of Laws § 145 (1971).

20  *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175 (W.D. Wash. 2006). This test requires

21  courts to weigh the parties' state contacts by evaluating (1) where the injury occurred, (2) where

22  the injurious conduct occurred, (3) the parties' place of incorporation, place of business,

23  domicile, or place of residence, and (4) the place where the parties' relationship was centered. *Id.*

24

1    at 1176. If contacts are evenly balanced between the parties, courts then "consider 'the interests

2    and public policies' of the concerned states." *Id.* (internal citation omitted).

3         Here, TIBCO alleges that Edifecs's trade secret claim involves a theory of liability called

4    "inevitable disclosure." [2] California does not recognize claims for inevitable disclosure. *Whyte v.*

5    *Schlage Lock Company*, 101 Cal. App. 4th 1443, 1463 (Div. 3 Cal. 2002) ("Lest there be any

6    doubt about our holding, our rejection of the inevitable disclosure doctrine is complete.").

7    Washington, on the other hand, has yet to decide whether it rejects or adopts the inevitable

8    disclosure doctrine. *Compare Temco Metal Prod. v.GT Dev.  Corp.*, 2000 WL 556607, at *3 (D.

9    Or. May 5, 2000) (interpreting Washington law as providing limited endorsement of the

10   doctrine), *with Desert Sun Net LLC v. Kepler*, 2006 WL 3091170, *8 (W.D. Wash. Oct. 27,

11   2006) (rejecting an inevitable disclosure-like claim as speculative).  Edifecs argues that its trade

12   secret misappropriation claim is actually a claim for "threatened misappropriation," a theory of

13   misappropriation that is either conceptually distinct from, or a derivative of, the theory of

14   inevitable disclosure. Both Washington and California recognize threatened misappropriation.

15   *See, e.g., Central Valley General Hosp. v. Smith*, 162 Cal. App. 4th 501, 524 (2008) ("that

16   threatened misappropriation of trade secrets may be enjoined is the law of California despite the

17   rejection of the inevitable disclosure doctrine by California courts.").

18        Washington has a paucity of law concerning both inevitable disclosure and threatened

19   misappropriation. Therefore, it is impossible for the Court to determine whether an actual

20   conflict exists between the laws of California and Washington with respect to Plaintiff's trade

21   _____

22   [2] The inevitable disclosure doctrine permits a plaintiff to prove trade secret misappropriation by showing that the
     defendant's new employment will inevitably lead to reliance on plaintiff's trade secrets. *Pepsico, Inc., v. Redmond*,

23   54 F.3d 1262, 1269 (7th Cir. 1995). This theory allows courts to enjoin a defendant's competitive employment.
     Injunctions granted on the basis of inevitable disclosure presuppose that "the employee will necessarily rely—
     consciously or unconsciously—upon knowledge of the former employer's trade secrets in performing his or her new

24   job duties." *Id.*

1   secret claim, regardless of how that claim is characterized. Erring on the side of caution, the

2   Court presumes that an actual conflict of law exists and applies the significant relationship test to

3   determine the appropriate law to be applied. [3]

4        Plaintiff argues that the defendant fails to rebut the presumption favoring Washington law

5   because the suit was brought by a Washington company that will be injured in Washington. The

6   Court disagrees that this fact alone satisfies the significant relationship test. Applying the test's

7   factors, neither party's contacts tip the scale in favor of one or the other. First, the injury

8   occurred in Washington as Edifecs will feel the effects of trade secret misappropriation there.

9   Second, the conduct that caused injury probably occurred in California. Although plaintiff notes

10  that defendant has offices in Washington, it does not allege that the twelve individuals it seeks to

11  restrain work outside of California. Therefore, this factor favors TIBCO. Third, the location of

12  the parties favors neither side as Edifecs, although having some presence in Washington, holds

13  its main offices in California. Fourth, the relationship is centered in both Washington and

14  California. Thus, a strict interpretation of the test's four factors favors neither Washington nor

15  California. However, Comment F of the Restatement shows that the place where the injurious

16  conduct occurred is heavily weighted in trade secret disputes. *See* Restatement (Second) of

17  Conflict of Laws § 145 (1971). Here, the alleged injurious conduct occurred within TIBCO's

18  offices and among TIBCO employees. Thus, California law applies.

19        Considering the interests and public policies of the two states, the result is the same.

20  Washington has an interest in protecting its companies from trade secret misappropriation. *See*

21  RCW 19.108.010 *et seq.* However, California's policies make clear that California has an

22  _____

23  [3] The Court notes that, even if plaintiff's trade secret claim were to present no actual conflict of law, the result
    would be the same. An "actual conflict" is one in which the application of state law is outcome determinative.
    Therefore, if no conflict existed as to Plaintiff's claim, then the outcome derived from either the application of

24  California or Washington law would be the same.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO
AMEND COMPLAINT - 6

exceedingly strong interest in protecting its businesses and employees from unreasonable trade restraints. *See* Cal. Bus. & Prof. Code § 16600. After weighing California's interest in limiting trade restraints against Washington's interest in protecting its companies from trade secret misappropriation, California's interest trumps. Moreover, plaintiffs' claims are dependent upon the parties' contract, in which the parties expressly agreed to contract under the laws of California. Therefore, application of California law is appropriate.

**C. Plaintiff's Claims**

1. <u>Trade Secret Misappropriation</u>

To make a prima facie claim for misappropriation under the California Uniform Trade Secret Act (CUTSA), a plaintiff must allege (1) that it possesses a trade secret and (2) that the defendant actually misappropriated or threatened to misappropriate the trade secret through either wrongful acquisition, disclosure, or use. *See Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (6th D. Cal. 2010). Neither party disputes, as of yet, the classification of software licensed to TIBCO as Edifecs' trade secret.  Therefore, the central issue with respect to plaintiff's trade secret claim is whether TIBCO's actions amount to actual or threatened trade secret misappropriation.

TIBCO argues that Edifecs has failed to state a claim for either actual or threatened misappropriation because the complaint alleges only that TIBCO possesses Edifecs's trade secrets and that Edifecs is fearful that disclosure has occurred or will occur. TIBCO construes this allegation as invoking the inevitable disclosure doctrine— a doctrine that, as noted above, California rejects. *See Whyte*, 101 Cal. App. 4th at 1462-63 (noting that California has strong policy objections to burdening employee mobility and that, because inevitable disclosure injunctions effectively impose a non-competition covenant, California courts declined to adopt

1   the theory). Thus, Defendant urges the Court to dismiss plaintiff's CUTSA claim because

2   California courts reject the theory of inevitable disclosure.

3         The Court agrees in part with Defendant. If Plaintiff's claim were merely a claim for

4   inevitable disclosure, the claim would fail as a matter of law. However, plaintiff specifically

5   alleges threatened misappropriation, not inevitable disclosure.  Therefore, the Court evaluates

6   Plaintiff's claim on the basis of sufficiency with respect to the elements of a claim for threatened

7   misappropriation.  *See* Fed. R. Civ. P. 8(e).

8         In California, "threatened misappropriation means a threat by a defendant to misuse trade

9   secrets, manifested by words or conduct, where the evidence indicates imminent misuse."

10  *Central Valley General Hosp. v. Smith*, 162 Cal. App. 4th 501, 527 (2008).  The only "threat"

11  that TIBCO has made with respect to Plaintiff's trade secret is the "threat" of opting not to

12  segregate its employees following a lawful acquisition of another company.  The Court declines

13  to interpret TIBCO's business decision with respect to how to comply with its confidentiality

14  obligations as commensurate to an affirmative threat to disclose Edifecs' trade secret.  Because

15  plaintiff has not alleged that TIBCO has made any threat, manifested by words or conduct, that

16  would indicate imminent misuse, Plaintiff has failed to state a claim upon which relief can be

17  granted.

18        Plaintiff relies heavily on the outcome in *Clorox Company v. S.C. Johnson and Son, Inc.*,

19  627 F. Supp. 2d 954 (E.D. Wisc. 2009) (applying California law) for the proposition that, under

20  California law, a claim for threatened misappropriation may survive a 12(b)(6) motion even if

21  the allegations only support a claim for inevitable disclosure.  Dkt. # 24, p. 19.  Plaintiff's

22  reliance is misplaced.  Plaintiff's complaint does not include any of the allegations of threatened

23  misappropriation that are present in the complaint at issue in *Clorox.*  For example, the employee

24

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO
AMEND COMPLAINT - 8

in *Clorox* allegedly had his assistant shred documents four days before his resignation. *Id.* The employee in *Clorox* was recorded on video surveillance at Clorox's offices the weekend before his resignation entering the building with a small bag and leaving with a large bag on rollers. *Id.* The employee in *Clorox* allegedly entered Clorox's offices in the middle of the night that he tenured his resignation and "downloaded information from his office laptop to a USB drive, including … 'Comparison Spreadsheets' as well as files named 'CLX Computer' and 'Contacts.'" *Id.* In contrast, TIBCO is alleged to have done nothing that would suggest a threat of imminent misappropriation other than *not* segregate its employees following the acquisition of Foresight. Absent the kind of specific allegations of affirmative conduct that would indicate a threat, Edifecs' complaint fails to state a plausible claim for threatened misappropriation.

Indeed, Edifecs' allegations are more similar to the allegations at issue in *Ciena Commc'ns, Inc. v. Nachazel*. 2010 WL 3489915 *4 (D. Colo. Aug. 31, 2010). There, defendant Alcatel hired plaintiff's former employee. *Id.* at *1. The employee had specific knowledge of plaintiff's trade secrets. *Id.* The plaintiff, like Edifecs, argued that because the employee had intimate knowledge of valuable trade secrets, his employment by a competitor either did, or would, lead to unauthorized trade secret disclosure and ultimate misuse. *See id*. Persuaded that plaintiff's claim lacked factual support, the court helpfully detailed several examples of factual assertions that would permit an inference of threatened misappropriation. The court suggested that evidence of Alcatel contacting plaintiff's exclusive customers or evidence that Alcatel produced comparative product literature that described plaintiff's products using information that was previously only known to plaintiff would be factually sufficient. *Id.* at *4. However, the *Ciena* court concluded that plaintiff's conclusory recitation that defendants either had

1  misappropriated, or threatened to misappropriate plaintiff's trade secrets, standing alone, did not

2  withstand a motion to dismiss.  *Id.*

3        Here, as in *Ciena*, Edifecs offers nothing more than speculation to support its claim.

4  Although several TIBCO employees know Edifecs's trade secrets, and these employees might

5  work with Foresight in the future based on TIBCO's recent acquisition of the company, there are

6  no facts alleged to suggest that these employees are using or threatening to use Edifecs's trade

7  secrets in a way that amounts to misappropriation. As supported by counsel's statements during

8  oral argument, Edifecs did not know any facts that support an inference of misappropriation.[4]

9  Without something more tangible, the Court finds the complaint too speculative to state a viable

10  claim for relief.

11      2.  Breach of Contract

12        Edifecs alleges TIBCO breached its express contractual obligation to "use a reasonable

13  standard of care to . . . avoid disclosure of any Confidential Information of the other party."[5] *See*

14  Dkt. # 1, ¶¶ 30-32. Edifecs construes "reasonable standard of care" to mean that when TIBCO

15  acquired Foresight, it was required to segregate documents and several employees so as to

16  protect against the possibility that these employees would unlawfully use or disclose Edifecs's

17  confidential information. *Id.* Thus, while Edifecs acknowledges that the Foresight acquisition

18  poses no contractual breach, it argues that the acquisition heightened TIBCO's contractual duty

19  to limit the disclosure of confidential information, which was breached by TIBCO's failure to

20  segregate documents and employees. *See* Dkt. # 24, p. 3. The Court disagrees.

21

22  _____

23  [4] Edifecs argued that it would be thrilled to learn that no misappropriation had taken place. *See* Transcript of Oral Argument, December 3, 2010.

24  [5] The Court considers the complaint in its entirety, including the contract terms incorporated by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

1   First, there is no language in the contract that imposes an obligation on TIBCO to

2   segregate employees and documents or otherwise adhere to Edifecs' interpretation of what is

3   reasonable upon TIBCO's acquisition of a rival company.  The Court will not write this

4   obligation into the contract.  Second, such an obligation would be inconsistent with the language

5   of the contract.  The license agreement expressly grants TIBCO an independent development

6   right allowing for the creation of competitive products. Yet, it does not require TIBCO to

7   segregate employees and documents from those employees creating competitive products.  The

8   only restriction on developing such products is that they cannot be derived from reverse

9   engineering or decompiling of Edifecs's products or source code. Dkt. # 17, Ex. A, p. 10.

10  Therefore, it would be inconsistent to interpret the contract to require TIBCO to segregate its

11  employees and documents from Foresight simply because it acquired a subsidiary to create

12  competitive products, rather than leverage its existing employees for that purpose.  Thus,

13  Edifecs's claim for breach of contract is dismissed.

14  3.  <u>Breach of Implied Covenant</u>

15  In the alternative, Edifecs argues that TIBCO breached its duty of good faith and fair

16  dealing when it refused to segregate employees from Foresight.  The covenant of good faith and

17  fair dealing "exists merely to prevent one contracting party from unfairly frustrating the other

18  party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat. Inc.*, 24

19  Cal.4th 317, 349 -350 (Cal. 2000)(emphasis in original).  The implied covenant "cannot impose

20  substantive duties or limits on the contracting parties beyond those incorporated in the specific

21  terms of their agreement." *Id.*  As established above, the contract does not require TIBCO to

22  segregate its employees or documents.   Rather, the license agreement affords Edifecs protection

23  of its trade secrets.  Since Edifecs has failed to allege that TIBCO's failure to segregate its

24

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO
AMEND COMPLAINT - 11

1    documents and employees has actually frustrated its ability to receive the benefit of trade secret

2    protection, this claim is dismissed as well.

3    **D.  Other Pending Motions**

4         Plaintiff requests relief from the restrictions of Fed. R. Civ. P. 26(d) so that it may depose

5    and discover documents from TIBCO prior to the early conference required under Rule 26(f).

6    Specifically, Edifecs requests that narrowly-tailored discovery requests and a 30(b)(6) deposition

7    of TIBCO be completed before April 2, 2010.  However, April 2, 2010 has come and gone.

8    Moreover, the parties have at this point concluded their Joint Status Report.  Dkt. #28.

9    Accordingly, Plaintiff's Motion for Expedited Discovery (Dkt. #3) is STRICKEN AS MOOT.

10   Defendant's Surreply to Plaintiff's Motion and Motion to Strike is also STRICKEN AS MOOT.

11   Finally, Defendant has moved to seal documents attached to its Response to Plaintiff's Motion to

12   Expedite.  Since Plaintiff's motion has been stricken, Defendant's confidential documents are no

13   longer pertinent to matters before this Court.  Defendant's Motion to Seal documents attached to

14   its Response to Plaintiff's Motion to Expedite Discovery is STRICKEN AS MOOT as well.  For

15   purposes of the Court's docket, the confidential documents will remain sealed.

16                                    **IV. CONCLUSION**

17        Plaintiff fails to state a claim for which relief can be granted with respect to each of its

18   causes of action.  Accordingly, Defendant's Motion to Dismiss is GRANTED.  Where a

19   complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the

20   court determines that the allegation of other facts consistent with the challenged pleading could

21   not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d

22   1393, 1401 (9th Cir. 1986). Accordingly, the Court grants Edifecs leave to amend its complaint.

23

24

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO
AMEND COMPLAINT - 12

1    Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

2   and the remainder of the record, the Court hereby finds and ORDERS:

3    (1) Plaintiff's complaint fails to state a claim upon which relief may be granted.  Plaintiff

4        may file an amended complaint curing the above-mentioned deficiencies by **Monday,**

5        **January 17, 2011**. The amended complaint must carry the same case number as this

6        one. If no amended complaint is timely filed, the Court will dismiss this complaint

7        pursuant to Fed. R. Civ. P. 12(b)(6).

8    (2) Plaintiff's Motion to Expedite Discovery (Dkt. #3) is STRICKEN AS MOOT.

9    (3) Defendant's Motion to Seal (Dkt. #14) is STRICKEN AS MOOT.  The documents at

10       issue in Defendant's motion shall remain under seal for the purposes of the Court's

11       docket.

12   (4) Defendant's motion to strike (Dkt. #23) is STRICKEN AS MOOT.

13   (5) The Clerk is directed to forward a copy of this Order to all counsel of record.

14

15

16   Dated this 17th day of December 2010.

17

18

19   RICARDO S. MARTINEZ

20   UNITED STATES DISTRICT JUDGE

21

22

23

24

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO
AMEND COMPLAINT - 13